## UNITED STATES v. COPLON.
### Cr. No. 381–1949.

United States District Court
District of Columbia.

June 26, 1950.

See also, D.C., 89 F.Supp. 664.

John M. Kelley, Jr., Raymond P. Whearty, Fred E. Strine, Sp. Assts. to Atty. Gen., for plaintiff.

Sidney S. Berman, Leonard B. Boudin (of Neuburger, Shapiro, Rabinowitz & Boudin), New York City, Max L. Rosenstein, Washington, D. C., for defendant.

REEVES, Judge.

On April 17, 1950, the defendant through her counsel filed a motion for a new trial upon the ground above indicated. The motion was succinctly drawn and merely moved the court "for an order granting a new trial based on the ground of newly discovered evidence." Particulars were not set out. The motion was supplemented by affidavits wherein the claimed newly discovered evidence was suggested and outlined. Previously a like motion had been filed in the Court of Appeals, to which court the case had been appealed after sentence imposed on or about the first of July, 1949.

After consideration of said motion and its contents so far as pertinent here, the Court of Appeals, on March 29, 1950, ordered that " * * * the motions be, and they are hereby denied, without prejudice to a renewal thereof *after the District Court has been given an opportunity to entertain such a motion for new trial on the ground of newly discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.*" (Emphasis mine.)

The undersigned having presided at the trial of the case, at the request of the presiding judge of the United States Court of Appeals fixed the date for a hearing, and on June 22, 1950, said motion was argued and counsel for the parties submitted by affidavits and other memorandum such facts and data and authorities as they deemed appropriate.

The case was extensively argued both on behalf of the defendant and the government. Both in the arguments and the briefs of the parties it was and is inferred that the principal and only complaint is that the evidence upon which the defendant was convicted was the product of or traceable to wire-tapping in violation of the provisions of Section 605, Title 47 U.S.C.A., relating to unauthorized publication or use of communications.

■ As a premise for the proper consideration of the motion it should be kept in mind that if the conviction of the defendant was effected by the use of evidence poisoned and tainted with wire-tapping, then it is obvious under the authorities of Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Weiss et al. v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298, that a new trial should be granted. However, the defendant, through her counsel, does not specifically impugn or challenge any particular testimony adduced against her at the trial.

Adverting to the points enumerated by counsel:

*First.* It is broadly asserted that the defendant was not apprized until December 10, 1949, that her "wires were constantly tapped and her mail intercepted by agents of the Federal Bureau of Investigation during the months of January, February and March 1949, to wit, during the period covered by the allegations in both counts of the indictment."

[2] It may be conceded that the agents of the Government had indulged in wire-tapping as asserted by the defendant, through her counsel, and that the first knowledge of such conduct was acquired by her in December, 1949. These averments, however, would be inadequate to show that any testimony offered at her trial was tainted by or traceable to, or the product of wire-tapping. It is the rule announced by the cases above cited that: "tangible, physical actions separate and apart from what may have been said about them over the telephone," is admissible. While counsel do not point out any particular evidence that was the product of wire-tapping yet it appears to be conceded that information had been obtained by agents of the government regarding the time when the defendant was leaving Washington for New York by intercepting telephone conversations. The testimony in the trial, however, showed that conversations and inquiries had with and made to other employees or officials of the Government by defendant had aroused their suspicion and caused them to take note of the times the defendant had arranged to visit New York City. In fact, she had made these announcements to a supervising officer or superior whose permission was essential, in each instance, and this was done at a considerable interval before she actually made her trips to New York City. Such was the evidence in the trial of the case, and such evidence was not supplemented by any information by wire-tapping. Because of conditions relating to loyalty then prevailing, the conduct and attitude of the defendant was deemed sufficient to put the agents of the Government upon their inquiry and to cause them to make observations upon her conduct. Such led, according to the evidence, to the surveillances in the City of New York. The very fact that the Government (if it be a fact and apparently it is) obtained the identical information wrongfully, would not destroy or taint evidence otherwise lawfully and properly acquired as the record disclosed in this case.

*Second.* It is again contended and earnest arguments by defendant's counsel were made concerning alleged "wire-tapping and mail interception * * * continued after the indictment in the instant proceedings * * * during the trial, and even after conviction."

This all may be true but, again, it would not impugn or poison the evidence legitimately obtained and used by the Government in the trial. The very fact that the agents of the Government may have committed serious breaches of the law (and such is only assumed for the purpose of this memorandum) yet, their wrongdoing would not vindicate the defendant or warrant the court in granting a new trial except that it appear that such conduct of the Government and the information thus acquired was employed to bring about her conviction. Obviously the information obtained by wire-tapping and mail interception would have no influence upon this case "after conviction."

*Third.* The same thing may be said regarding the third point, to the effect that "agents of the FBI also intercepted telephone conversations between" defendant and her lawyer.

Again, while this may have been a serious breach of ethics, such conduct cannot be punished by granting a new trial unless such conduct was the means of procuring evidence to convict the defendant. Quite perfectly the old adage, "Damnum absque injuria" (Wrong without injury) would apply in the case.

*Fourth.* The fourth point urged by counsel for the defendant is not helpful on the question involved, namely, "That wire-tapping is prohibited by Section 605 of the Federal Communications Act and is a crime against the United States pursuant to Section 501 of the same Act."

This must be conceded and persons who have violated the provisions of the Act may be subject to prosecution, conviction and punishment. The court here is not concerned with the misconduct of others save only in so far as it may have affected the evidence in the case tried, that is to say, poisoned or tainted the evidence as having been obtained as the result of wire-tapping, a violation of the law. In this connection it was argued by counsel, both at the bar and in lucid briefs, that the data slips or notes offered in evidence as having been taken from the defendant when she was arrested contained information obtained by wire-tapping. Such information referred to third parties. The defendant was not concerned with that information and the Communications Act is designed to protect an individual or individuals who have participated in the intercepted communications. Moreover, the Communications Act does not punish the interception of messages but the punishment is inflicted in case of disclosure, and the disclosure made in court was curiously participated in by the defendant. The Government undertook to withhold a large number of data slips but, at the insistence of defendant's counsel, the objections of the Government to their admission were overruled and same were admitted. Furthermore, it did not appear that such data slips or the information contained therein had been obtained by wire-tapping.

*Fifth.* The fifth point urged by counsel is without merit. It is contended in point Five that "the interception of telephone conversations between attorney and client is in violation of the due process clause of the Fifth Amendment, etc."

Whatever ethical wrong there may have been in such conduct, if perpetrated, they were acts that could have no influence upon this case unless tainted and poisoned evidence was obtained thereby. Certainly there was no such evidence suggested, and counsel does not point out a line, or even a scintilla of testimony procured in this way.

The same thing may be said of the sixth point, relating to the interception of the detendant's mail. It may be wrong and a violation of the Postal laws, as stated by counsel. However, in this case, it is immaterial how much or how greatly the law may have been violated by agents in dealing with the defendant's mail unless such wrongdoing resulted in the production and use of testimony against the defendant in her trial. Counsel do not name a single item or piece of mail thus intercepted or any information that was obtained thereby which was used as evidence against the defendant.

In an affidavit of Mr. Archibald Palmer, formerly attorney for the defend-

ant and who conducted her defense in this case, it is pointed out that the court sustained an objection to a general inquiry concerning wire-tapping. The question was all-comprehensive and did not seek to elicit from the witness whether evidence then being given was the product of wire-tapping. The question did not relate to any evidence offered by the Government or to any evidence or fact elicited on cross-examination. Propounded in the way it was, it was wholly immaterial.

Previously a request, extensive and all-comprehensive, had been made of counsel and addressed to General Kelley, who replied: "I deem what he said regarding tapping of telephones to be purely a fishing expedition which requires no answer." Mr. Palmer then said, "If Mr. Kelley or Mr. Whearty will say upon the record that the phones of these people who I have named have never been tapped, I will take the unsworn word of either one of these men that the phones have not been tapped at any time before this case started or since." Thereupon the Court rejoined: "That is a matter of conference with counsel. Let's proceed."

It was after that, that the court sustained an objection to the general and very comprehensive inquiry about wire-tapping.

The propriety of this ruling is supported by the fact that Judge Ryan, who presided in the New York case, devoted approximately six weeks to an inquiry concerning wire-tapping, on a motion to suppress, and, at the end of the long odyssey, adjudged the expedition both futile and fruitless. The issues were practically identical.

If counsel for the defendant had challenged any evidence as having a possible origin in, or being traceable to, wire-tapping, he would have been permitted to pursue the inquiry, but to permit a foray into a virgin and wholly unrelated field of facts would have but added more weight to the already too heavy feet of justice. See Judge Ryan's opinion, United States v. Coplon, D.C., 88 F.Supp. 921.

In the briefs of counsel for the defendant the predominant thought is expressed that wire-tapping within itself is wrongful and violation of the law. This is not true; otherwise one would not dare dial a radio. The congressional act as construed by the Supreme Court does not make wire-tapping an offense, but the interception and disclosure of the contents of the message constitute the crime. Both acts are essential to complete the offense.

The fact that the Congress has repeatedly refused to ban wire-tapping may justify the reasonable inference that the enactment of Section 605, Title 47, supra, was for the purpose of protecting and preserving the integrity, inviolate, of legitimate commercial transactions and that it was never intended to impair the police power of the Government, so essential to its preservation, by opening wide the channels and avenues of our diversified communications system to violators of the law. As presently construed, the criminal may ply his nefarious trade by radio, telegraph and telephone and enjoy immunity from detection and prosecution perforce the protecting shield and aegis of said Section 605, supra. Police power is an all-pervasive and somewhat indefinable power of Government, and by analogy from common-law principles, wiretapping would be an approved and legitimate practice by law enforcement officers. Defendant cannot well complain because the agents of the Government refrained from offending against the law by making disclosures or use of information obtained by wire-tapping.

Able and diligent counsel for defendant make an additional contention that the arrest of the defendant was not justified under the provisions of Section 3052, Title 18 U.S.C.A., for the reason that, as it is alleged by counsel, "there was no likelihood of escape." Whether the statute cited by counsel has been modified since the arrest was made is unimportant for the reason that it is a common-law rule, and therefore a part of the laws of the United States, that an enforcement officer may make an arrest without warrant where there is probable cause to believe that a felony has been or is about to be committed. Carroll v. United States, 267 U.S. 132, loc. cit. 156, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Papani v. United States, 9

Cir., 84 F.2d 160, 6 C.J.S., Arrest, § 6b (2), p. 587; 6 C.J.S., Arrest, § 6b (1), p. 586. However the matter of an improper arrest is not for the consideration of the court here. It is not newly discovered evidence and that question should have been raised in the regular motion for a new trial or by assignment of error, and it rests wholly for decision in the Court of Appeals.

The affidavits submitted by the parties, together with their briefs, have been examined and studied. I find no conflict of facts; neither do I find any conflict of the law and I find from the evidence submitted and from the records that the evidence upon which plaintiff was convicted did not stem from nor was it traceable to wiretapping, and, being untainted under the doctrine of the Nardone and Weiss cases, said motion should be overruled, and it will be so ordered.