## NARDONE ET AL. *v.* UNITED STATES.

No. 240. Argued November 14, 1939.—Decided December 11, 1939.

*Mr. David V. Cahill* for Frank Carmine Nardone; *Mr. Jesse Climenko,* with whom *Mr. J. Bertram Wegman* was on the brief, for Nathan W. Hoffman; and *Mr. Louis Halle* for Robert Gottfried,—petitioners.

*Assistant Attorney General Rogge,* with whom *Solicitor General Jackson* and *Messrs. William W. Barron, George F. Kneip, Louis B. Schwartz,* and *W. Marvin Smith* were on the brief, for the United States.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

We are called upon for the second time to review affirmance by the Circuit Court of Appeals for the Second Circuit of petitioners' convictions under an indictment for frauds on the revenue. In *Nardone v. United States,* 302 U. S. 379, this Court reversed the convictions on the first trial because they were procured by evidence secured in violation of § 605 of the Communications Act of 1934 (c. 652, 48 Stat. 1064, 1103; 47 U. S. C., § 605). For details of the facts reference is made to that case. Suffice it here to say that this evidence consisted of intercepted telephone messages, constituting "a vital part of the prosecution's proof."

Conviction followed a new trial, and "the main question" on the appeal below is the only question open here—namely, "whether the [trial] judge improperly refused to allow the accused to examine the prosecution as to the uses to which it had put the information" which *Nardone v. United States, supra,* found to have vitiated the original conviction. Though candidly doubtful of the result it reached, the Circuit Court of Appeals limited the scope of § 605 to the precise circumstances before this Court in the first *Nardone* case, and ruled that "Congress had not also made incompetent testimony which had become accessible by the use of unlawful 'taps', for to divulge that information was not to divulge an intercepted telephone talk." 106 F. 2d 41.

The issue thus tendered by the Circuit Court of Appeals is the broad one, whether or not § 605 merely interdicts the introduction into evidence in a federal trial of intercepted telephone conversations, leaving the prosecution free to make every other use of the proscribed evidence. Plainly, this presents a far-reaching problem in

the administration of federal criminal justice, and we therefore brought the case here for disposition.

Any claim for the exclusion of evidence logically relevant in criminal prosecutions is heavily handicapped. It must be justified by an over-riding public policy expressed in the Constitution or the law of the land. In a problem such as that before us now, two opposing concerns must be harmonized: on the one hand, the stern enforcement of the criminal law; on the other, protection of that realm of privacy left free by Constitution and laws but capable of infringement either through zeal or design. In accommodating both these concerns, meaning must be given to what Congress has written, even if not in explicit language, so as to effectuate the policy which Congress has formulated.

We are here dealing with specific prohibition of particular methods in obtaining evidence. The result of the holding below is to reduce the scope of § 605 to exclusion of the exact words heard through forbidden interceptions, allowing these interceptions every derivative use that they may serve. Such a reading of § 605 would largely stultify the policy which compelled our decision in *Nardone* v. *United States, supra.* That decision was not the product of a merely meticulous reading of technical language. It was the translation into practicality of broad considerations of morality and public well-being. This Court found that the logically relevant proof which Congress had outlawed, it outlawed because "inconsistent with ethical standards and destructive of personal liberty." 302 U. S. 379, 383. To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed "inconsistent with ethical standards and destructive of personal liberty." What was said in a different context in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392, is pertinent here: "The essence of a pro-

vision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all." See *Gouled* v. *United States,* 255 U. S. 298, 307. A decent respect for the policy of Congress must save us from imputing to it a self-defeating, if not disingenuous purpose.

Here, as in the *Silverthorne* case, the facts improperly obtained do not "become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it" simply because it is used derivatively. 251 U. S. 385, 392.

In practice this generalized statement may conceal concrete complexities. Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint. A sensible way of dealing with such a situation—fair to the intendment of § 605, but fair also to the purposes of the criminal law—ought to be within the reach of experienced trial judges. The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed. Once that is established—as was plainly done here—the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin.

Dispatch in the trial of criminal causes is essential in bringing crime to book. Therefore, timely steps must be taken to secure judicial determination of claims of illegality on the part of agents of the Government in obtain-

ing testimony. To interrupt the course of the trial·for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention. Like mischief would result were tenuous claims sufficient to justify the trial court's indulgence of inquiry into the legitimacy of evidence in the Government's possession. So to read a Congressional prohibition against the availability of certain evidence would be to subordinate the need for rigorous administration of justice to undue solicitude for potential and, it is to be hopèd, abnormal disobedience of the law by the law's officers. Therefore claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury. And if such a claim is made after the trial is under way, the judge must likewise be satisfied that the accused could not at an earlier stage have had adequate knowledge to make his claim. The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal, in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges.

We have dealt with this case on the basic issue tendered by the Circuit Court of Appeals and have not indulged in a finicking appraisal of the record, either as to the issue of the time limit of the proposed inquiry into the use to which the Government had put its illicit practices, or as to the existence of independent sources for the Government's proof. Since the Circuit Court of Appeals did

not question its timeliness, we shall not. And the hostility of the trial court to the whole scope of the inquiry reflected his own accord with the rule of law by which the Circuit Court of Appeals sustained him, and which we find erroneous.

The judgment must be reversed and remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE McREYNOLDS is of opinion that the Circuit Court of Appeals reached the proper conclusion upon reasons there adequately stated and its judgment should be affirmed.

MR. JUSTICE REED took no part in the consideration or decision of this case.