Robert H. McLINDON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17646.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 16, 1963.

Decided Feb. 6, 1964.

Petition for Rehearing Denied March 20, 1964.

Mr. George B. Mickum, III, Washington, D. C., with whom Mr. William E. Miller, Washington, D. C., (both appointed by this court) was on the brief, for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty., for appellee. Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, William Collins, Jr., and Robert A. Leve-town, Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant was convicted of transporting a motor vehicle in interstate commerce, knowing that the vehicle had been stolen, in violation of 18 U.S.C. § 2312. In this court his contention is that the Government was not entitled to use the testimony of certain witnesses at his trial, urging that the identity of each of these witnesses and the nature of the testimony they would give was learned only as a result of the unlawful search of appellant's automobile, and the unlawful seizure of documents and articles found in it.

It appeared at the trial that on October 10, 1962, appellant drove a 1957 Oldsmobile to a used car lot in downtown Washington, and offered it for sale to one of the employees. The latter consulted the proprietor, who came out and looked at the car. He thereupon went back to his office and called the police. After the officers arrived they talked with the appellant, and ultimately searched the car. The testimony was in conflict as to the surrounding circumstances. But it is clear that, among other things, documents and license plates relating to a Triumph automobile were found in the car. The police soon discovered, through information which had been circulated by the National Auto Theft Bureau throughout the eastern United States, that the Triumph had been stolen from a person in Pennsylvania.

Appellant was not prosecuted for any offense connected with the Oldsmobile car. He was, however, indicted for transporting the stolen Triumph in interstate commerce. Prior to his trial appellant moved to suppress the documents and license plates relating to the Triumph which had been found in the Oldsmobile by the police, on the ground of illegal search and seizure. This motion was granted. At the trial, counsel for

appellant moved that certain witnesses be prevented from testifying on the ground that the police had discovered these witnesses through leads obtained from the seized documents and license plates. This motion was denied. The three witnesses whose testimony appellant sought to suppress were named Hamovitz, Henderson and Katsouros. Mr. Hamovitz testified appellant had stayed at his home in Columbus, Ohio, in the summer of 1962, and had then had in his possession a Triumph car answering the description of the stolen car. Mr. Henderson testified that in the same period he had rented to appellant garage space in Columbus for a Triumph car answering the same description. Mr. Katsouros testified that he was a used car dealer in the District of Columbia and that appellant had sold to him the Triumph car in September, 1962, causing him ultimately to lose about $2,225.00 when the fact that it was stolen became known.

The Government concedes that the identity of these witnesses could not have been ascertained "but for" the finding of the documents and license plates in appellant's possession. It makes a strong showing, however, that on the basis of the prosecution's testimony the arrest and search were based on probable cause and hence were legal. It insists that the District Court erred in suppressing the physical evidence taken and that this court should so hold. It also urges that the doctrine of the "fruit of the poisonous tree," see Nardone v. United States, 308 U.S. 338 at 341, 60 S.Ct. 266 at 268, 84 L.Ed. 307 at 312 (1939), should not be extended to cover a situation like the present.

The question whether, and in what manner, the Government can obtain review of an order suppressing evidence is a difficult one. Compare Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); Wayne v. United States, 115 U.S.App.D.C. 234 at 240, 318 F.2d 205 at 211, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963) (independent opinion of Judge Burger). Appellant concedes the Government's right to have the matter reviewed, but says that a cross-appeal is necessary. No such appeal was taken by the Government in the instant case. We need not, however, decide that question here, because we are satisfied that on the record before him the District Judge did not err when he held that the arrest and search were not based on probable cause.[1]

We turn now to the consequences of the illegality of the search. As the Supreme Court recently said: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Wong Sun v. United States, 371 U.S. 471 at 487–488, 83 S.Ct. 407 at 417, 9 L.Ed.2d 441 at 455 (1963). Evidence obtained by the Government "from an independent source" should not be excluded. See Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Further, where the police have been guilty of misconduct, evidence should not be excluded where the connection between the evidence and the misconduct is "so attenuated as to dissipate the taint." Nardone v. United States, supra, 308 U.S. at 341, 60 S.Ct. at 268, 84 L.Ed. at 312; Gregory v. United States, 97 U.S.App.D.C. 305 at 306,

1. The Government concedes on brief that the facts to which the defendant testified "barely afford room for suspicion; they could never justify a finding of probable cause." Appellee argues, however, that the trial judge's statement that the issue before him was a "close question" indicated his belief in the prosecution's testimony, and that he decided as he did because of a mistaken understanding of the applicable law. That the judge was re-ferring to the question of credibility, however, is clear from his concern over the Government's failure to call certain witnesses, who might have been in a position to have rebutted the defendant's testimony or provided support for the hearsay testimony of prosecution witnesses. In view of these significant gaps in the Government's case, the trial judge obviously felt constrained to accept the defendant's version of the facts.

231 F.2d 258 at 259 (1956); Wayne v. United States, supra.

▮ The difficulty in the present case is that we do not know enough of the facts to reconstruct the connection, if any, between the materials found in the Oldsmobile and the testimony of the three witnesses at the trial. The Government has not shown whether it derived its knowledge of the witnesses directly from the materials (which of course are not before us), or whether it found or would have found these witnesses through independent sources or sources so remote from the original illegality that the attenuation rule should apply. Nor do we know how significant merely locating the witnesses was in leading to their testimony at trial.[2]

▮ The record will be remanded so that the District Court may supplement it by holding a hearing on the subject, and making findings of fact and conclusions of law. Compare Somer v. United States, 138 F.2d 790 (2d Cir. 1943). Jurisdiction will be retained by this court to dispose of the appeal, when the record is returned. Compare Beck v. Federal Land Bank of Houston, 146 F.2d 623 (8th Cir. 1945); Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951); United States v. Coplon, 185 F.2d 629, 636, 28 A.L.R.2d 1041 (2d Cir. 1950).

So ordered.

WILBUR K. MILLER, Circuit Judge, dissenting.

I do not agree with the majority because I think the judgment of the District Court should be affirmed on the present record.

The opinion holds that—

"The proffer of a living witness is not to be *mechanically equated* with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give." 324 F.2d at 881. (Emphasis supplied.)

We agree. In each case the court must determine how great a part the particular manifestation of "individual human personality" played in the ultimate receipt of the testimony in question. Indications in the record that mere knowledge of the witness' identity would not inevitably guarantee that his testimony would be favorable to the prosecution; that the witness might eventually have voluntarily gone to the police even without their knowing his identity; that his testimony has remained unchanged from the start—all are relevant factors to be considered in determining the final outcome. See, generally, Wong Sun v. United States, supra, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963), citing Maguire, Evidence of Guilt 221 (1959); Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed. 2d 83 (1961).

---

2. We do not read our decision in Smith v. United States and Bowden v. United States, 117 U.S.App.D.C. —, 324 F. 2d 879 (1963), as holding that testimony may never be excluded, as that would contradict the well-established rule forbidding testimony as to visual and aural observations during an unlawful search, seizure, detention or wiretap. See, for example, Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487 (1959). And compare Wong Sun v. United States, supra, 371 U.S. at 486, 83 S.Ct. at 416, 9 L.Ed.2d at 454. The Smith and Bowden decision involved an attempt to suppress the testimony of one Holman, an eyewitness to a brutal murder, whose identity was revealed by the defendants while they were being held in police custody, one of them in violation of Rule 5(a), Fed.R. Crim.P. "[W]hen initially located Holman gave no information adverse to appellants * * *." 324 F.2d at 881, n. 2. At the coroner's inquest and before the grand jury the witness again refused to give such testimony. "[O]nly after reflection and the interaction of * * * faculties of human personality ['will, perception, memory, and volition,' *id.*, 324 F.2d at 881] did Holman eventually relate to the jury the events of the night of the killing." Id. at 324 F.2d 881, n. 2. According to Holman's testimony, he changed his mind because "I used to think about it at night all the time. * * * Because I kept thinking about the man, the man dead." Record at 629.