**Roy A. SMITH, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Cornelius ANDERSON, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 17838, 17839.**

United States Court of Appeals District of Columbia Circuit.

April 6, 1965.

---

Miller, Senior Circuit Judge, dissented.

———◆———

Mr. Alexander Boskoff (appointed by this court), Washington, D. C., for appellants.

Mr. Alan Kay, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Harold Titus, Asst. U. S. Attys., were on the brief, for appellee.

Mr. William H. Willcox, Asst. U. S. Atty., also entered an appearance for appellee in No. 17838.

Before BAZELON, Chief Judge, and WILBUR K. MILLER, Senior Circuit Judge, and WASHINGTON, Circuit Judge.

BAZELON, Chief Judge:

Appellants were convicted on two counts of unauthorized use of an automobile and one count of interstate transportation of a stolen automobile. A stolen automobile transmission had been seen by police in a search, without a warrant, of appellants' automobile trunk. One count in the present conviction involves theft of this transmission. At trial two witnesses, Hardy and Donaldson, testified that appellants had sold this transmission to Hardy. When these appeals were before us earlier, we held the police search illegal, and remanded for a determination whether this testimony must be excluded as "fruit" of the search.[1]

The District Court found the following. During the illegal search, police noted the transmission number without removing the transmission from the trunk. Subsequently they learned that the transmission was stolen. The police then obtained a warrant to search the car and found that the transmission had been removed. Upon questioning, appellant Anderson stated, without hesitation, that he had delivered this transmission and another to one Dean at an address in Maryland. Police located Dean, who stated that he had sold the transmissions to Hardy and Donaldson. Dean gave only Donaldson's address. A detective telephoned Donaldson's father, who stated that his son and a friend, Hardy, had purchased the transmissions and that they would bring the transmissions to the police. That evening, after learning of his father's conversation with the detective, Donaldson called Hardy and told him that both transmissions were stolen. He also told Hardy, mistakenly, that the police did not have Hardy's name. But Hardy "still decided that the best thing for him to do was to take the transmission" to the police. Hardy did this the next day, and his transmission was the one police had seen in the illegal search. Appellants' conviction on one count rested exclusively on police testimony regarding the illegal

1. 118 U.S.App.D.C. 235, 335 F.2d 270 (1964).

search and Hardy's and Donaldson's testimony regarding Hardy's purchase of the transmission.

On these facts, the District Court held "with some trepidation that * * * the testimony of Hardy and Donaldson is too attenuated to the [illegal] discovery of this transmission * * *." We disagree. We think the testimony was "come at by exploitation of * * * illegality"[2] and must therefore be excluded. The police used the knowledge gained by the illegal search to discover that the transmission was stolen and that it had been sold through an intermediary to Donaldson or Hardy. It may be that the police contacted only Donaldson and that Hardy mistakenly believed that the police did not yet know of him. But, by contacting Donaldson, the police created the pressure which impelled Hardy to turn the transmission over to the police. Under the circumstances, it would be unrealistic to think that Hardy would have spontaneously taken the transmission to the police were it not for the police investigation. Apparently, he only learned that the transmission was stolen when Donaldson called him and told him about the call from the police.

Smith and Bowden v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879 (1963), does not establish that wherever illegally obtained evidence leads to a witness, the witness' testimony is necessarily attenuated from the illegality.[3] Rather it holds that "[t]he proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized." 117 U.S.App. D.C. at 3, 324 F.2d at 881. There the police located an eyewitness to a brutal murder through an accused's confession obtained in violation of Rule 5(a), FED.R. CRIM.P., and this court held the witness' testimony attenuated from the illegality. But the witness had initially refused to testify and "only after reflection and the interaction of these faculties of human personality ['will, perception, memory and volition'] did [the witness] eventually relate to the jury the events of the night of the killing." 117 U.S.App.D.C. at 3 n. 2, 324 F.2d at 881 n. 2. In McLindon v. United States, we said:

"In each case the court must determine how great a part the particular manifestation of 'individual human personality' played in the ultimate receipt of the testimony in question. Indications in the record that mere knowledge of the witness' identity would not inevitably guarantee that his testimony would be favorable to the prosecution; that the witness might eventually have voluntarily gone to the police even without their knowing his identity; that his testimony has remained unchanged from the start—all are relevant factors to be considered in determining the final outcome." [117 U.S.App.D.C. at 286 n. 2, 329 F.2d at 241 n. 2.]

In the present case, although several "human personalities" intervened between illegal discovery of the transmission and the testimony of Hardy and Donaldson, none of these resisted giving evidence as did the witness in *Smith and Bowden,* and none acted in such a significant manner as to break the chain from the illegal source to the testimony introduced. "The road from the [illegal source] to the testimony may be long, but it is straight." United States v. Tane, 329 F.2d 848, 853 (2 Cir. 1964).[4]

---

**2.** Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**3.** See McLindon v. United States, 117 U.S. App.D.C. 283, 329 F.2d 238 (1964); Edwards v. United States, 117 U.S.App.D.C. 383, 330 F.2d 849 (1964); United States v. Tane, 329 F.2d 848 (2d Cir. 1964).

**4.** Moreover, Hardy and Donaldson would not inevitably have been discovered without the illegal search, and their testimony is not attenuated on that account. See Wayne v. United States, 115 U.S. App.D.C. 234, 318 F.2d 205, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963); Killough v. United States, 119 U.S.App.D.C. ——, 336 F.2d 929 (1964).

In remanding this case for further findings, we stated:

"If Hardy's and Donaldson's testimony was inadmissible fruit of the poisonous tree, * * * then there was *no competent evidence on count one,* and we would be obliged to hold, as a matter of law, that counts two and three were sufficiently prejudiced to require reversal." [118 U.S.App. D.C. at 242, 335 F.2d at 277, emphasis in original.]

Accordingly, we order a judgment of acquittal on count one; the convictions on the other two counts must be reversed.

So ordered.

WILBUR K. MILLER, Senior Circuit Judge, dissents.