Chief Judge Fuld (dissenting).
In this case, the police concededly conducted an illegal search of the defendant’s apartment, seizing narcotics and other contraband. While the officers were engaged in'such search, a man by the name of Bramante was admitted into the apartment by the police and questioned for approximately a half hour. He gave them certain information which led directly to an Elizabeth Holbauer. The police, accompanied by Bramante, proceeded to Mrs. Holbauer’s home, interrogated her and was told that the defendant had performed two abortions upon her. Her testimony, reflecting the information imparted, led to the present indictment against the defendant for the crime of abortion.
He thereafter made a motion to suppress the physical evidence which had been taken from his apartment during the illegal search. The motion was granted, and the People took no appeal from the resulting order. Some time later, the defendant moved for an order suppressing all the evidence, “tangible, verbal or otherwise ”, which stemmed from the search, on the ground that it was a product of the primary illegality. It is this motion, granted by the trial court—but denied on appeal by the Appellate Division—with which we are concerned.
Settled beyond all question is the rule that evidence obtained during illegal search as well as evidence which stems therefrom— the product of such search, the so-called “fruit of the poisonous tree ”—may not be used against the defendant upon his trial. (See, e.g., Wong Sun v. United States, 371 U. S. 471, 484; see, also, Nardone v. United States, 308 U. S. 338, 340-341; Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 392.) As Justice Holmes, writing for the court in the Silverthorne case, put it, “ [t]he essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all ” (251 U. S., at p. 392). In other words, Holmes continued, “the knowledge gained by the Government’s own wrong cannot be used by it ”.
The question then arises whether a differentiation should be drawn between tangible evidence stemming from “ exploitation of [the primary] illegality” (Wong Sun v. United States, 371 U. S. 471, 488, supra) and the testimony of a witness whose identity is discovered through such illegality. (See Brown v. *703 United States, 375 F. 2d 310, 315; Smith v. United States, 324 F. 2d 879, 881-882.) Since the purpose of the “ poison fruit” doctrine is to prevent Grovernment from making use of “ knowledge gained by [its] own wrong ” (Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 392, supra), I perceive no reasonable or logical basis for any distinction between inanimate (tangible) and animate (testimonial) evidence. (See, e.g., Smith v. United States, 344 F. 2d 545, 547; McLindon v. United States, 329 F. 2d 238, 241; United States v. Tane, 329 F. 2d 848, 853; People v. Schaumloffel, 53 Cal. 2d 96; People v. Albea, 2 Ill. 2d 317, 322; People v. Martin, 382 Ill. 192, 202-203.) Thus, the high court of Illinois, after noting that most cases involving illegal search and seizure are concerned with the suppression of “ evidence in the form of papers, documents, records or other property ”, went on to say that “ we cannot be unmindful of the principles established by long precedent which have sought to preserve the sanctity of the home and the right of privacy of the individual merely because the evidence has changed from inanimate to animate form.” (People v. Albea, 2 Ill. 2d 317, 322, supra.)
I recognize, of course, that the facts illegally obtained do not “ become sacred and inaccessible.” (Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 392, supra.) If knowledge of the facts is gained from an independent source, separate and apart from the illicit search, or if connection between the information obtained through such unlawful conduct and the testimony offered by the prosecution is ‘ ‘ so attenuated as to dissipate the taint” (Nardone v. United States, 308 U. S. 338, 341, supra), that testimony may be used. (See, e.g., Payne v. United States, 294 F. 2d 723.)[1] But the present is not such a case. Here, the connection between the illegal search *704 and the testimony (to be given) by Bramante and Holbauer is clear, direct and strong. Bramante was discovered and questioned during the very course of such search, and the information which he gave led immediately to Holbauer. The situation is quite similar to that presented in Smith v. United States (344 F. 2d 545, supra). In that case, the suspicions of the police were aroused by their discovery of a stolen automobile. transmission while conducting an illegal search. After interrogating the defendants and a third party, they learned the identity of two witnesses, Hardy and Donaldson. The testimony of these witnesses, the court held, should have been excluded as the product or “fruit” of the illegal search. “ [Although several ‘ human personalities ’ intervened between the illegal discovery of the transmission and the testimony of Hardy and Donaldson,” it was said (344 F. 2d, at p. 547), “ none of these resisted giving evidence * * * and none acted in such a significant manner as to break the chain from the illegal source to the testimony introduced. ‘ The road from the [illegal source] to the testimony may be long, but it is straight. ’ United States v. Tane, 329 F. 2d 848, 853 ”. In the case before us, the road from illegality to the witnesses and their testimony was not only ‘‘ straight ’’ but, as I have already noted, short and immediate.
Nor is there the slightest indication that either of the witnesses would have been discovered or that their testimony would or could have been procured in the absence of the primary illegality. There can be no doubt that their testimony is the fruit of the poisonous tree and should be suppressed. I would merely add that experience indicates that exclusion of evidence and its fruits, be they inanimate or animate, seems the only method that may be relied upon to discourage illegality on the part of law enforcement officers. (See, eg., Mapp v. Ohio, 367 U. S. 643,651-652.)
The order appealed from should be reversed and that of the Supreme Court, Bronx County, reinstated.
Order affirmed.

. The Payne ease presents an example of the type of ease, the rare and extreme one, in which the causal connection between the illegality and the evidence presented was sufficiently remote to justify the application of the “attenuation” principle. A witness who had, on his own initiative, filed a complaint, had identified the defendant at a police lineup while the latter was being illegally detained. The court rejected the defendant’s contention that the witness’ subsequent testimony against him should be excluded (294 F. 2d, at p. 727): “ The consequence of accepting appellant’s contention in the present situation would be that Warren would be forever precluded from testifying against Payne in court, merely because he had complied with the request of the police that he come to police headquarters and had there identified Payne as the robber.”.