**UNITED STATES of America**
v.
**Elby ALSTON.**
**Crim. No. 1522–69.**

United States District Court,
District of Columbia.
March 6, 1970.

Stephen Grafman, Asst. U. S. Atty., for the United States.

John H. Treanor, Jr., Washington, D. C., for defendant Alston.

MEMORANDUM OPINION

GESELL, District Judge.

Defendant moved to suppress a check the police took from his wallet and the proffered testimony of the complaining witness located from the name on the check. He asserts that the seizure of the check was illegal and that subsequent testimony from the witness is tainted by that illegality under the "fruit of the poisonous tree" doctrine.

Testimony was taken at a hearing. The proof showed that defendant was lawfully arrested for disorderly conduct, taken to the police precinct and booked for disorderly. He gave the name Roy Thomas; because he had told the arresting officer that he had numerous arrests and had just been released from jail on a homicide charge, an inquiry was made at the precinct during booking to determine if defendant was wanted on any other charges.

When no record of his prior law involvements could be verified under the name Roy Thomas, police suspected defendant was using a false name and looked through his wallet in an effort to determine his true identity. They then returned the wallet and its contents to defendant.

Defendant deposited the necessary $10 collateral and was permitted to forfeit. However, he was not allowed to leave. Instead, he was asked to wait in an adjoining room at the precinct, no reason being given. Within the next five minutes the police asked again to see his wallet. A more careful search disclosed an uncancelled check. While defendant was still detained, a telephone call was made to the maker of the check who stated that the check, which was for a small amount, was part of the loot in a $186.00 robbery. Defendant was then charged with robbery and was, several days later, identified at a properly conducted lineup. This indictment charging robbery and ADW resulted.

It does not require any extended discussion under these facts to demonstrate that the seizure of the check was unreasonable and prohibited by the Fourth Amendment. Once defendant was permitted to forfeit at the precinct, his subsequent detention was illegal and the second search of his wallet was improper. The Government suggests that the three-hour provision allowed for interrogation under 4 D.C.Code 140(a) should be interpreted to permit the post-forfeiture detention and search. While interrogation prior to booking for a reasonable time under proper circumstances may be permitted, once a suspect has been arrested, booked, searched and allowed to pay his penalty, further detention and search is unequivocally improper. The check will be suppressed.

The Government's case, however, rests primarily upon the testimony of the witness whom it concedes it would not have located but for the illegal search. The question whether this evidence must also be suppressed because of the original illegal search is a more difficult one. The answer must come from an analysis of the "fruit of the poisonous tree" doctrine, as enunciated primarily in three decisions of the Supreme Court. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In *Silverthorne*, Mr. Justice Holmes first announced the doctrine in a case where the Government sought to introduce photographs they had made of illegally seized corporate records which had been held inadmissible.

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court, but that it shall not be used at all." 251 U.S. 392, 40 S.Ct. 183.

The only exception to this apparently flat rule was that knowledge of the facts which were disclosed by illegal police conduct which "is gained from an independent source * * * may be proved like any others." *Id.*

Mr. Justice Frankfurter broadened the exception in *Nardone.* He stated:

"Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint." 308 U.S. at 341, 60 S.Ct. at 268.

Thus, apparently facts not obtained from an independent source but distant in causal connection from the illegality could be employed.

Finally, Mr. Justice Brennan articulated a refined standard in *Wong Sun:*

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" 371 U.S. at 487–488, 83 S.Ct. at 417.

None of the Supreme Court cases have dealt specifically with the simple fact situation of a complaining witness whose identity is learned through illegal means and who, quite naturally, agrees to testify upon being contacted. The three leading cases involved either tangible evidence or testimony of a co-defendant. In the factual context of this case, neither the *Wong Sun* standard nor earlier statements of the rule articulate a clear basis for determining when testimonial evidence is sufficiently purged of the primary taint (and thus attenuated) and when it is the product of exploitation. The Supreme Court has, in short, not been faced with the fundamental choice, necessary in this context, between two conflicting theories: (1) that contact by the police of a witness whose identity is immediately obtained from the illegal article is by itself a form of exploitation of the primary illegality such that subsequent testimony must be suppressed; or (2) that the decision of a witness to testify and the jury's evaluation of his testimony are independent, intervening factors which attenuate the taint.

Although the Court of Appeals has considered the problem of the "tainted witness" no fewer than five times since *Wong Sun,* it has not made the basic choice between these two theories. *Compare* Smith (and Bowden) v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879 (1963); McLindon v. United States, 117 U.S.App.D.C. 283, 329 F.2d 238 (1964); Edwards v. United States, 117 U.S.App. DC. 383, 330 F.2d 849 (1964); Smith (and Anderson) v. United States, 120 U.S.App.D.C. 160, 344 F.2d 545 (1965); Brown v. United States, 126 U.S.App. D.C. 134, 375 F.2d 310 (1967).

There is both confusion and uncertainty in these cases. The Government relies upon the earliest, *Smith (and Bowden),* as establishing a rule that testimony of a witness should be admitted regardless of the means by which his identity is learned "since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give." 324 F.2d at 881. However, this suggested rule manifestly has not prevailed in this Circuit, as analysis of the subsequent cases demonstrates. Since it appears that the result in "tainted witness" cases depends more upon the particular panel sitting than anything else, there is as yet no clear guidance for the trial court from the Court of Appeals. Accordingly, it is necessary to return to the fundamental theory of the exclusionary rule in disposing of this case.

The main function to be served by excluding this testimony is to deter future

violations of the Fourth Amendment and other constitutional guarantees. If deterrence of improper police conduct is to be effective, the exclusionary rule must be strict. To permit the prosecution to use testimony directly obtained as a result of illegal police conduct, no matter how inadvertent, will frustrate the objectives of the Fourth Amendment just as much as would use of a seized article itself. In fact, in a case like the present one, the testimony is far more valuable to the Government than is the fact that defendant possessed recently stolen property. There appear only two possible circumstances in which the testimony of a witness, learned of through illegal conduct, would be admissible: when his identity also is obtained independently; and when, as Justice Frankfurter suggested in *Nardone,* the causal connection between initial illegality and evidence is such that "good sense" indicates it is so complicated, remote and indirect that no deterrence could be achieved by exclusion. Since there is no suggestion that either of the circumstances is present in this case, the testimony of the witness must also be suppressed.

Although there is no binding authority which mandates the conclusion or its opposite in this case, the Court notes that the vast majority of courts in other jurisdictions have reached the same result where the chain of facts from illegal discovery to the testimony of the witness has been similarly direct. *See, e. g.,* United States v. Tane, 329 F.2d 848 (2d Cir. 1964) ; United States v. Schipani, 289 F.Supp. 43 (E.D.N.Y.1968) ; Goodman v. United States, 285 F.Supp. 245 (C.D.Cal.1968) ; United States v. Birrell, 276 F.Supp. 798 (S.D.N.Y.1967) ; People v. Schaumloffel, 53 Cal.2d 96, 346 P.2d 393 (1959) ; People v. Martin, 382 Ill. 192, 46 N.E.2d 997 (1942).

Since the Government indicated at the hearing that it would not be in a position to go forward if the testimony of the complaining witness were suppressed, it appears that this indictment must be dismissed. Counsel should submit an appropriate order.