Jack R. ALLEN, Plaintiff-Appellee,

v.

Hoyt C. CUPP, Warden, Defendant-Appellant.

No. 24297.

United States Court of Appeals,
Ninth Circuit.

April 30, 1970.

Rehearing Denied May 28, 1970.

Thomas H. Denney, Asst. Atty. Gen. (argued), Lee Johnson, Atty. Gen. of Oregon, Salem, Or., for defendant-appellant.

Howard R. Lonergan (argued), Portland, Or., for plaintiff-appellee.

Before DUNIWAY, WRIGHT and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Jack R. Allen, represented by retained counsel, sought a writ of habeas corpus from his Oregon State confinement on two burglary convictions. His application alleged that both convictions were based on a confession which was the product of an illegal arrest. Following the warden's return and answer to the order to show cause, a pretrial order and stipulation were entered into admitting, as exhibits, the transcripts of petitioner's three state court trials and the three opinions of the Supreme Court of Oregon.[1] The case was then submitted on the record.

The district court found (1) that petitioner's detention and arrest for driving without a valid driver's license was a pretext for holding him for suspicion of burglary, and (2) the confession was a product of the illegal detention. Allen v. Cupp, 298 F.Supp. 432 (1969). On appeal by the warden, we reverse. Assuming, *arguendo*, that the arrest and custody on the traffic charge was illegal, we hold that there is no support in the state court record for the district court's conclusion that the confession was the product of the illegal arrest or custody.

The facts are, for the most part, undisputed, and we shall deal only with those pertinent to this aspect of the appeal.

On the morning of March 24, 1963, the Oregon State Police, suspecting that petitioner was wanted by authorities in Medford, stopped his car on the highway. When he was unable to produce a valid driver's license,[2] he and two companions were taken to the nearby Josephine County Jail where he was charged with driving without a license. He was in custody on the traffic charge for 30 hours, during which time he talked with an attorney on the traffic charge and some mention was made of a felony warrant pending in nearby Jackson County.

On March 25, a Jackson County court issued a warrant charging Allen with burglary. He does not contend that this warrant was not based upon probable cause or was invalid in any other respect. At 5:30 P.M. that afternoon, petitioner was arrested for burglary and transported to the Jackson County Jail.

The events occurring after he arrived at the Jackson County Jail were summarized by the Oregon Supreme Court in affirming the second Jackson County trial. The trial transcript indicates that those factual determinations are fairly supported by the record:

"Deputy Sheriff Bjorensen was at the Jackson county jail when Allen arrived and took Allen to an interrogation room and talked to him. The officers testified that he informed Allen that he had a right to counsel, that he did not have to say anything, and that

---

1. Petitioner was tried for burglaries in two counties. The Jackson County judgment was reversed for a new trial because of the failure of the trial court to hold a hearing on the circumstances surrounding the confession. State v. Allen, 239 Or. 524, 398 P.2d 477 (1965). The Baker County judgment was affirmed. State v. Allen, 241 Or. 95, 404 P.2d 207 (1965). Upon retrial, the Jackson County judgment was affirmed. State v. Allen, 248 Or. 376, 434 P.2d 740 (1967).

2. Petitioner's Washington State operator's permit was not valid in Oregon, in which state he was a resident at the time of his arrest. Ore.Rev.Stats. §§ 482.040–050.

anything he said could be used against him. Allen was reluctant to talk, and the officer told Allen that Snodgrass [Allen's accomplice in the burglaries who was a passenger in Allen's car when it was stopped on the highway] had given a statement. Allen asked to talk to Snodgrass and Snodgrass was brought to the room. Allen asked Snodgrass whether he had given a statement and received an affirmative reply. Allen then gave a statement to Deputy Sheriffs Bjorensen and De-Berry, admitting his complicity in the Jeddeloh burglary, as well as numerous other burglaries, including one in Baker county involved in State v. Allen, 241 Or. 95, 404 P.2d 207 (1965). Defendant's interrogation and the preparation and signing of his statement were concluded in about an hour and a half. Defendant was taken before a magistrate in the district court for Jackson county on Tuesday morning, March 26, 1963." 434 P.2d at 741–742.

The Oregon Supreme Court concluded that there was "no evidence of any causal connection between defendant's arrest on the traffic charge and his subsequent admissions made at Medford concerning the burglary." 434 P.2d at 743. The district court below, other than alluding to the 30-hour custody on the traffic charge, simply concluded "that the confession was a product of the illegal arrest. * * *" 298 F.Supp. at 434. We disagree.

Our discussion must begin with Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In that case the court was faced with two statements, one given by James Wah Toy directly after "[s]ix or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping" and "[he] had been almost immediately handcuffed and arrested." 371 U.S. at 486, 83 S.Ct. at 416. The other statement was given by co-defendant Wong Sun following his illegal arrest and after he "had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement, * * *" 371 U.S. at 491, 83 S.Ct. at 419.

Toy's statement, the court held, was not "sufficiently an act of free will to purge the primary taint of the unlawful invasion" into his bedroom (371 U.S. at 486, 83 S.Ct. at 416), but the connection between Wong Sun's arrest and his confession "had 'become so attenuated as to dissipate the taint.' " [3] 371 U.S. at 491, 83 S.Ct. at 419.

*Wong Sun* involved two extreme factual situations and the language employed by the Court offers little assistance when faced with a problem falling within the void. However, it is clear that the Court was concerned, first, with preventing the admission into evidence of statements made under the "oppressive circumstances" surrounding an illegal arrest which are likely to overcome the arrestee's "free will" (371 U.S. at 486 n. 12, 83 S.Ct. 407), and, second, with curtailing arrests found to be in violation of the Fourth Amendment by denying the officers the fruits thereof, whether verbal or physical.[4]

A proper analysis of a "poisoned fruit" problem involving a confession must take into account these two, but interrelated, goals. See Kamisar, Illegal Searches or

---

3. Citing Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

4. In this regard the court stated:
   " * * * [T]he policies underlying the exclusionary rule [do not] invite any logical distinction between physical and verbal evidence. Either in terms of deterring lawless conduct by federal officers, Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained, Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction." 371 U.S. at 486, 83 S.Ct. at 416.

Seizures and Contemporaneous Incriminating Statements: A Dialogue on a Neglected Area of Criminal Procedure, 1961 U.Ill.L.F. 78, 135–36.

■ In determining whether the statement was sufficiently an act of free will, the circumstances surrounding the arrest and detention must be closely examined. Relevant to this determination are the mode of arrest, the manner of custody, and the method employed in exacting the confession. Phelper v. Decker, 401 F.2d 232, 236–238 (5th Cir. 1968); United States v. Close, 349 F.2d 841, 851 (4th Cir. 1965); Collins v. Beto, 348 F.2d 823, 827–829 (5th Cir. 1965); Commonwealth ex rel. Craig v. Maroney, 348 F.2d 22, 28–30 (3rd Cir. 1965). Obviously, the intervening advice from or opportunity to consult with an attorney may go a long way in eliminating the spectre of coercion. Phelper v. Decker, *supra*. Cf., Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Kamisar, *supra*, 1961 U.Ill.L.F. 78, 137–138.

■ In Allen's case, we find nothing in the state court record to upset its finding that the confession was not brought about or "impelled" by the coercive influences surrounding the illegal arrest and custody. Cf., Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). The period of detention was not characterized by prolonged periods of interrogation and, in fact, petitioner discussed his predicament with counsel retained on the traffic charge. His confession, given some two hours after he was validly arrested for burglary, was preceded by warnings which, though not up to the standards of Miranda v. Arizona, *supra*,[5] were sufficient to assist in attenuating the taint of the illegal arrest and custody. We conclude, as did the Oregon Supreme Court in reviewing the second Jackson County trial, that the confession was not the product of the illegal arrest and custody, but the product of appellee's own decision to confess after his companion had done likewise.

Nor is the confession entitled to suppression under the deterrence rationale of *Wong Sun*. Deterrence can have its effect only when it can be said that an object of the illegal conduct was the securing of the evidence sought to be suppressed. Hence, under *Wong Sun*, an otherwise voluntary confession should be suppressed only when the facts indicate that the illegal arrest was made for the purpose of securing the confession. Requiring only that it be voluntary may make tasting the fruit more difficult, but would not diminish its temptation. *See* Collins v. Beto, *supra*, 348 F.2d 823, 827–828. *Cf.*, Smith v. United States, 120 U.S.App.D.C. 160, 344 F.2d 545, 547 (1965).

However, a simple *but-for* relationship between the primary illegality and the confession is not enough.

> "Rather, the more apt question in such a case is 'whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v. United States, 371 U.S. at 488, 83 S.Ct. at 417.

Admittedly petitioner in the case now before us might not have confessed but-for his arrest and custody simply because he might never have been caught. But there is nothing in the state court record to indicate that the police exploited his allegedly illegal arrest and custody in order to induce a confession.

■ Instead, the record affirmatively establishes that petitioner was arrested and held on the traffic charge while the burglary investigation proceeded on other fronts. Only after petitioner was validly arrested on the burglary charge did the officers begin the questioning of petitioner which led to the confession.

---

5. Petitioner's three trials all commenced prior to the June 13, 1966 decision in *Miranda*. Hence, petitioner cannot avail himself of the full warnings. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Under these circumstances, we hold that the confession was not an exploitation of the allegedly illegal arrest and custody, but was arrived at by means unrelated to the detention.

Appellee argues that Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), holding that fingerprint evidence taken during a period of illegal detention must be suppressed, compels the same result with regard to a confession. However, *Davis* dealt only with evidence seized during an unlawful detention which was the purpose of the detention. Moreover, appellee cannot avail himself of the *Davis* rationale because his detention was not illegal at the time the confession was given.

The remaining cases cited by appellee are not in point.

Reversed.