MR. JUSTICE HARRISON
dissenting:
I must respectfully dissent to the holding of the majority opinion.
I do so on the basis of the second confession made by defendant during the period of some six weeks when he was a patient at the Warm Springs State Hospital. As noted in the majority opinion, his live-in lady friend, Cathy Terry, visited him frequently while he was a patient at Warm Springs. On each occasion she questioned defendant as to his involvement in the murders of the four members of the Tillotson family. In a deposition taken by the Yellowstone County attorney in 1977, she stated that the defendant told her on one occasion that he “thought he was involved. He said he did not know how. He did not know why. But he thought he had used his own gun to shoot.”
Following reversal by this Court of his first conviction, defendant immediately sought suppression of his involuntary confession and all evidence obtained as a result of that confession under the *492 “fruit of the poisonous tree” doctrine. This included the suppression of .22 caliber cartridges and the above-mentioned statements made to Cathy Terry during his incarceration at Warm Springs. (I point out here that the alleged statement was not introduced at the first trial as a result of a stipulation entered into between the Yellowstone County attorney and defense counsel. The county attorney agreed that he would not attempt to introduce the statement if defense counsel did not pursue his theory of a common-law marriage between defendant and Cathy Terry.) The District Court, as noted by the majority, suppressed the admission made to Cathy Terry under the “cat out of the bag” doctrine.
I do not find that the incriminating statement made by defendant was “fruit” of his alleged illegally obtained confession.
The “fruit of the poisonous tree” doctrine was first set forth by the United States Supreme Court in Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1429. In Silverthorne a federal agent seized documents, photographed them, and then returned them to the defendant. The Court held that the use of the photographs at trial was improper:
“. . . The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all ... If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government’s own wrong cannot be used by it in the way proposed . . .” 251 U.S. at 392, 40 S.Ct. at 183.
Later, in Nardone v. United States (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, the Court qualified the rule of Silverthorne by noting that although there might be a casual connection between the “poisoned tree” and the evidence offered at trial, the “connection may become so attenuated as to dissipate the taint.”
In Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441, the Supreme Court clarified its application of the “fruit of the poisonous tree.” In Wong Sun the Court set forth a two-part test to determine whether a subsequent discovery of *493 evidence is tainted with the primary illegality: (1) the exclusionary rule has no application where the government learns of the evidence “from an independent source;” and (2) the exclusionary rule has no application where the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint.
The United States Supreme Court indicated that all evidence is not “fruit” simply because it would not have come to light but for the illegal actions of the police. Rather, the controlling question is, “. . . whether, granting the establishment of a primary illegality, the evidence to which the instant objection is made has been come at by exploration of that illegality or by means sufficiently distinguished to be purged by the primary taint...” See McQuire, Evidence of Guilt, § 222.
While the Supreme Court has failed to elaborate on what is meant by the “independent source” language of Wong Sun, the lower federal courts and many state courts have interpreted the term in various ways to develop exceptions to the “fruit of the poisonous tree” doctrine. Many courts have accepted the “inevitable discovery” exception to the fruit of the poisonous tree. See The Inevitable Discovery Exception to the Constitutional Exclusionary Rules, 74 Columbia L.R. 88, 90 (1974).
A reading of the cases indicates that the prosecution may succeed in removing the taint when it can be established that the incriminating evidence would have been discovered in absence of the illegal police conduct. The burden of proof of that showing rests upon the State. See Alderman v. United States (1969), 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176. The problem often arising in the case of confessions is the effect of the inadmissible confession upon subsequent confessions. The courts have developed certain criteria which they utilize to determine if the second confession is, under the Wong Sun test, purged from the primary taint of the first confession.
A frequently cited decision in this area which best reflects the current state of the law is United States v. Bayer (1947), 331 U.S. *494 532, 67 S.Ct. 1394, 91 L.Ed. 1654. In Bayer, which I feel is controlling in this case, the Court dealt with the admissibility of a second confession obtained from the defendant six months after the inadmissible confession. The Court upheld the admissibility of the second confession, emphasizing that the defendant (1) had made the second confession six months after the first; (2) was not under any sort of restraint in his freedom during the time; and (3) had received a fair warning that the second confession might be used against him. However, the court noted:
“. . . after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed . . .” 331 U.S. at 540-541, 67 S.Ct. at 1398.
The alleged statements of defendant do not appear to me to be of a kind which warrants exclusion under any rule. In my opinion, there exists no good reason why a second jury should not have been allowed to hear that evidence.