## UNITED STATES

v.

**Frederick M. LEWIS, 462 25 2515, Aviation Structural Mechanic (Structures) Airman (E–3), U.S. Navy.**

**NMCM 82 4417.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 12 May 1982.

Decided 28 Jan. 1983.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LT Lois B. Agronick, JAGC, USNR, Appellate Defense Counsel.

CDR Richard A. Monteith, JAGC, USN, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and GARVIN, JJ.

PER CURIAM:

We have examined the record of trial, the clemency petition, trial defense counsel's response to the staff judge advocate's review, the assignment of error, and the government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

Appellant has summarily assigned one issue for our consideration:

THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE RECORDS AND PREMISES OF BERNIE'S PAWN SHOP. IT WAS NOT INEVITABLE THAT THE AGENTS WOULD HAVE CHECKED THE PAWN SHOP ABSENT THE APPELLANT'S RESPONSES TO THE UNLAWFUL QUESTIONING OF ADCS PETERSON. *UNITED STATES v. KOZAK,* 12 M.J. 389 (C.M.A.1982). (Footnote deleted).

The relevant evidence obtained in the search of the pawn shop conducted by the Naval Investigative Service agent, Detective Bruns, consisted of a television set appellant had rented from the Navy Exchange and a flute which appellant had stolen from a fellow servicemember. Appellant had pawned both items.

Appellant's argument is specifically that, given the unwarned nature of appellant's remarks to Senior Chief Peterson, any evidence discovered as a consequence of those conversations would have been poisoned for purposes of admissibility at court. Appellant further argues that it was not inevitable that the authorities would have discovered the status of the television set and flute absent appellant's unwarned remarks. We disagree on both counts; our disagreement rests on the nature of the inevitable discovery rule.

■ For evidence to fall within the "inevitable discovery exception" to the fruit of the poisonous tree doctrine, absolute inevitability of discovery is not required; rather, all that is required is simply a *reasonable probability* that the evidence in question would have been discovered from other than a tainted source. *United States v. Brookins,* 614 F.2d 1037 (5th Cir.1980). In *Brookins,* the Court of Appeals looked to outside authority for a summary of its position:

> [T]he exclusionary rule does not come into play merely because the proffered evidence is in fact the product of an illegal act. If ... the illegal act merely contributed to the discovery of the allegedly tainted information and ... such information would have been acquired lawfully even if the illegal act had never transpired, the presumptive taint is removed, and the apparently poisoned fruit is made whole. In other words, if ... the illegal act was not an indispensable cause of the discovery of the proffered evidence, the exclusionary rule does not apply.

*United States v. Brookins,* at 1044, citing Maguire, *How to Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rule,* 55 J.Crim.L., Criminology, and Police Sci. 307, 313 (1964). Accord, *United States ex rel. Owens v. Twomey,* 508 F.2d 858, 865–66 (7th Cir.1974).

■ The military judge did not err when he denied the motion to suppress evidence regarding the television set that was obtained from Bernie's Pawn Shop. (Speci-

fication 1, Charge II). Nor did the judge err in overruling the defense objection to the admission of evidence of a flute which had been stolen from one of appellant's fellow servicemembers and which appellant pawned along with the television set. (Specification 3, Charge II). Senior Chief Peterson, who had discussed with appellant but not discovered the whereabouts of the television set before he suspected appellant of a crime and before giving appellant his rights knew, from independent sources, that the accused had rented a television set and was long overdue in returning it. Consequently, the focus of any inquiry into the nonreturn of the television set would have rested upon the accused. The record of trial shows that the Navy Exchange would have continued to seek the return of the television set. Detective Bruns would have been contacted and he would have conducted a preliminary inquiry into the matter. Thereafter, the investigatory procedures used by Detective Bruns in the case of "pawnable" items (Record, at 32), combined with Detective Bruns' prior knowledge of the accused's use of the pawn shop on numerous occasions (Record, at 32) and the close proximity of the pawn shop (Record, at 26) would, in all reasonable probability, have led Detective Bruns to check the records at the pawn shop, and discover evidence of both the television set and the flute *even if* he had never discussed the matter with Senior Chief Peterson.

We conclude that, prior to the questioning of the appellant by Senior Chief Peterson, a government agent, Detective Bruns, possessed leads that would have led in all reasonable probability to the pawn shop, and the pawn shop record of the appellant would, in all reasonable probability have been discovered in a lawful manner even had the challenged conversations not occurred. Consequently, the evidence showed "a reasonable probability that the police would have uncovered the derivative evidence apart from the [questioned] actions." *United States v. Brookins, supra* at 1044.

As regards evidence of the larceny of the flute, trial defense counsel made his objection in the following terms:

DC: Thank you, Your Honor. Before we get too far into trial counsel's examination, I wanted to pose this objection at this point. It is with regard to his likely testimony regarding his finding of a flute in the pawn shop. I know we've addressed some of these issues with a Motion to Suppress. At this point we would like to interpose an objection to his expected testimony with regard to the flute and draw distinctions between the reasons for that and the reason for the television. Unlike the situation regarding the television set, where the Navy Exchange was actively pursuing the whereabouts of the television set and had contacted the Senior Advisor of the accused and the judge has ruled that inevitably Agent Bruns would get involved in the case, the situation regarding the flute as we heard from testimony was raised substantially by the communications between Senior Chief Peterson and Agent Bruns. The individual, particularly the individual who had lost the flute, had filed no investigative report and the evidence is likely to show that more than a month had gone by before the individual, excuse me, more than a month had gone by since the time that the individual owner of the flute had lost it and he had taken no action about it. It is only because of the actions of Agent Bruns prompted by the communications by Senior Chief Peterson that the theft of the flute, that the discovery of the flute on the pawn record of the accused was ever discovered. Therefore, we feel that is more directly related to the inadmissible statements the accused made to Senior Chief Peterson and unlike the situation with the television set, there is not an independent basis for ruling that inevitably the government would have found out about this evidence, the existence of a pawn record with the flute on it.

Record, at 89–90.

■ At trial, Detective Bruns testified that, after receiving a phone call from Senior Chief Peterson regarding the missing television, Detective Bruns had checked the

accused's pawning record at the pawn shop. (Record, at 29 *et seq.*) In the records, the detective found that appellant had pawned a flute. The flute subsequently became the subject of an investigation when Detective Bruns learned that a similar flute had been stolen from the locker of a serviceman. The question we pose here is whether the evidence of appellant's pawning of the stolen flute would carry the taint alleged by appellant to have infected the evidence that he had wrongfully pawned the television set. We answer that question in the negative, for both the reasons already stated above in our discussion of the inevitable discovery rule and for the additional reasons which formed the rationale of the Court of Appeals in *United States v. Jones,* 608 F.2d 386 (9th Cir.1979).

In *Jones,* an illegal arrest produced a motel key which indicated the accused's possible residence. In a search of Jones' residence, the police, who, with the permission of Jones' roommate, conducted the search as part of an investigation into one burglary, found evidence of a hitherto unsuspected second burglary. There was no doubt that but for the illegal arrest, the motel key would have gone undiscovered; but for the discovery of the motel key, Jones' residence would have remained unknown to the police; and but for the consensual search of Jones' residence, evidence of the second burglary would not have come to light. More succinctly, but for the illegal arrest in the investigation of the first burglary, the police would not have discovered the evidence of the second. However, as the Court in *Jones* pointed out, a "but for" link between illegal police conduct and the suspect evidence is not in itself sufficient to require suppression. *Jones,* at 390. As the Ninth Circuit Court of Appeals stated in an earlier case:

> [W]hen officers through serendipity discover evidence concerning a suspect whom they are unlawfully investigating in connection with another, different, crime, the new evidence is not tainted where the officers discovered it only because their unlawful investigation fortuitously put them in a position to do so and

where their unlawful investigative intent did not extend to the additional evidence.

*United States v. Bacall,* 443 F.2d 1050, 1057 (9th Cir.1971).

·The courts must look further than the type of causal relationship between an allegedly illegal arrest or conversation and the discovery of evidence as found in *Jones* or the instant case to determine whether the police obtained the evidence by exploiting the illegality. See *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

In the instant case, as in *Jones,* there are three indicia of the extension of any taint: 1) How directly does the questionable police action lead to the discovery of the evidence sought to be introduced? 2) Were there events, other than those involving the questionable police activity which contributed to the discovery of the challenged evidence? and 3) To what extent would suppression of the challenged evidence further the exclusionary rule's purpose of deterring police misconduct?

In the instant case, the only direct result of Senior Chief Peterson's discussions with appellant was the decision by the Naval Investigative Service to open an investigation; that decision, of course, would have been made for a reason unrelated to Senior Chief Peterson's conversations with Detective Bruns: the strong interest of the Navy Exchange in finding its missing property. But even barring that second reason for an investigation, it would be difficult to imagine a more general or more indirect lead to the pawn shop records in general or the records on the flute in particular than the simple decision to open an investigation. We note here that Senior Chief Peterson neither asked appellant, nor heard appellant say, nor suggested to Detective Bruns, anything related to the pawn shop. Furthermore, when Detective Bruns perused appellant's pawn record, he was looking for evidence of a television set, not for evidence of a flute. He had, at that time, no reason to look for evidence of the latter. Like the evidence of the second burglary in *Jones,*

the evidence of the theft of the flute was too tenuously connected to the unwarned statements appellant made to Senior Chief Peterson to carry any taint giving rise to a challenge of illegality.

As for other events contributing to the discovery of the flute and its status, we note further that in *Jones,* the Court found any possible taint lessened by the voluntary consent of Jones' roommate to the police search. *Jones,* at 391. In the case *sub judice,* the perusal of the pawn shop records was conducted upon the voluntary consent of the pawn shop proprietor, who made available, not only the records relating to the television set, but also those relating to the flute. In addition, the owner of the flute voluntarily stated to the authorities in the instant case that the instrument had been stolen.

We turn finally to the question of deterrence: would application of the exclusionary rule in this case deter police misconduct? As for evidence of the theft of the flute, it is important that the authorities were not looking for evidence of that theft when they decided to investigate the disappearance of the television and pursued that investigation into the pawn shop. "Deterrence can have its effect only when it can be said that an object of the illegal conduct was the securing of the evidence sought to be suppressed." *Allen v. Cupp,* 426 F.2d 756, 759 (9th Cir.1970). In this case, the securing of evidence related to the theft of the flute was not the object of Senior Chief Peterson's challenged conversations with appellant.

In light of the foregoing—1) the tenuous nature of the nexus between appellant's unwarned remarks about the television set and the discovery of the theft of the flute; 2) the intervening voluntary consent of the pawn shop proprietor to the record search and the voluntary statement made by the flute's owner; and 3) the absence of any deterrent value in excluding the subject evidence—we find admissible the evidence pertaining to the theft of the flute.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.