Wachtler, J.
(concurring). Last term in United States v Peltier (422 US 531), the Supreme Court held that its decisions construing the Fourth Amendment so as to place totally new restrictions on police conduct should not be applied retroactively. The court reasoned that when the police had acted in good faith by conducting themselves in a manner which was not then proscribed, application of the exclusionary rule could have no deterrent value. Justice Brennan dissented noting that this doctrine created certain practical and conceptual absurdities, but predicted that the primary danger was that this "revision of the exclusionary rule” would not be confined to putative retroactivity cases, but would be pronounced applicable to all search and seizure cases and ultimately mark "the complete demise of the exclusionary rule” (United States v Peltier, 422 US 531, 551, supra).
Today a majority of this court has given life to Justice Brennan’s fears by holding that "the controlling consideration for determining the admissibility of 'verbal’ evidence obtained pursuant to claimed illegal police conduct is whether law ehforcement officers acted in good faith and with a fair basis for belief that probable cause existed for arrest.” Not *672 only is this holding contrary to established law (see, e.g., People v Grossman, 20 NY2d 346) but it strikes a mortal blow to the exclusionary rule which the Supreme Court itself has held to be "an essential ingredient of the Fourth Amendment” (Mapp v Ohio, 367 US 643, 651). In addition it is entirely unnecessary to the resolution of this case since the majority ultimately concludes — and I agree — that the evidence objected to was not, in any event, the "fruit” of the arrest. I am to affirm on the latter ground but I cannot join in the remainder of the opinion.
The majority recognizes that the initial stop was illegal "under the standards we enunciated in People v Ingle (36 NY2d 413, supra)” and that the gun seized was tainted. However they pass no judgment on the legality of the arrest following the seizure of the gun, and consider the events leading up to the arrest irrelevant. They conclude that once the gun was found, the police officers had a "reasonable basis” for arresting the defendants and since, at this point, they acted in good faith, there is no reason to exclude the subsequent statement or the fruits of that statement. In other words, in their view whether there was probable cause to make the arrest is irrelevant, since the exclusionary rule does not apply to the fruits of an arrest when the police act in good faith — with a reasonable or "fair basis for belief’ that there was probable cause.
If under the circumstances of this case it. can be said that the officers acted in good faith then "good faith” must mean ignorance of the law. Ingle, of course, did not announce any new rule and I assume, as apparently the majority has, that there is no question of its "retroactivity” (see, e.g., United States v Peltier, supra). And it is equally well settled that an illegal stop cannot mature into a valid arrest simply because contraband is discovered (Sibron v New York, 392 US 40). If ignorance of such fundamental principles can be characterized as "good faith”, and held to be "controlling”, in the future the defendant’s rights will not depend upon the Constitution, but rather upon the police officer’s knowledge of settled constitutional law. Carried to its logical conclusion a citizen will have no rights at all if he encounters an officer suffering from invincible ignorance of constitutional rights.
In short, the inevitable consequence of the rule the majority proposes today, would be to seriously dilute the exclusionary rule and the rights it seeks to foster. For these reasons I reject *673 the notion that when evidence is said to be the fruit of an illegal arrest the "controlling consideration” for determining admissibility is whether the police "acted in good faith with a fair basis for belief that probable cause existed for arrest”. That is not, and never has been, the controlling standard. The only proper inquiry in these cases is whether the police had probable cause to make the arrest, and if they did not, was the evidence subsequently obtained "tainted” by the illegality. (Wong Sun v United States, 371 US 471; Brown v Illinois, 422 US 590; cf. Johnson v Louisiana, 406 US 356.)
Here it is apodictic that the arrest of the defendant for possession of a weapon which had been illegally seized was unconstitutional (see, e.g., Johnson v United States, 333 US 10) and the only question is whether the connection between the illegal arrest and the defendant’s station house admissions had "become so attenuated as to dissipate the taint” (Nardone v United States, 308 US 338, 341; Wong Sun v United States, supra, at p 491).
Resolution of that issue, the Supreme Court has recently noted, requires an evaluation of the circumstances of the case "in light of the policy served by the exclusionary rule”, with special emphasis on three factors: "The temporal proximity of the arrest and the confession, the presence of intervening circumstances * * * and, particularly, the purpose and ffagrancy of the official misconduct” (Brown v Illinois, 422 US 590, 603-604, supra). (Emphasis added.)
In the case now before us it appears that the defendant’s statement was made within six or seven hours of his arrest, and that there were no intervening events of any significance. The defendant had not been arraigned on the weapons charge (Johnson v Louisiana, supra, at p 365) or released from custody (Wong Sun v United States, supra, at p 491) and although he had been advised of his Miranda rights, that is not conclusive (Brown v Illinois, supra).
However the record clearly establishes that the officers who made the arrest on the weapons charge had no intention of exploiting the illegality in order to solve the homicide. It seems evident that they were completely unaware of the defendant’s possible involvement in the homicide, and the statements later obtained by other officers were entirely unanticipated at the time the arrest was made. Thus unlike the situation in Brown the arrest here lacked the "quality of *674 purposefulness” (Brown v Illinois, supra at pp 590, 605) and the relationship between the arrest and the statement can be said to be so attenuated as to dissipate the taint. To put it another way, admission of the statement and its fruits is consistent with "the policy served by the exclusionary rule” since admission of this evidence obtained under the peculiar circumstances of this case should not "significantly encourage illicit police conduct in the future” (Pitler, "The Fruit of the Poisonous Tree” Revisited and Shepardized, 56 Cal L Rev 579, 589).
In sum I believe it is the court’s obligation to decide whether constitutional rights have been infringed and, having found a violation, it is the court’s duty to ensure that the fruits of the illegality are excluded at trial. This serves not only to deter future violations but to maintain the integrity of the judicial process (Mapp v Ohio, supra; see, also, Brown v Illinois, supra). To withhold the sanction because the police violated the defendant’s rights in good faith, can only encourage a studied ignorance of constitutional guarantees and ultimately prove them worthless. This court has traditionally followed the opposite course, often leading the Nation in defining and enlarging the constitutional rights of the accused. Now that the Supreme Court has signaled a retreat from this field, it is ironic that a majority of this court has chosen to lead the retreat.