# Presidential Control of Wireless and Cable Information Leaving the United States

The President has authority under the Communications Act of 1934 to control any radio station so as to prevent the transmission from the United States of any message, or part thereof, inimical to the national security and foreign policy of the nation. Specific emergency powers like those granted over radio are not contained in the Communications Act, or elsewhere, with respect to cables. But should the President as Commander in Chief and under his other constitutional powers deem such action essential to the protection of the armed forces or the national security, or the protection of shipping, in a time of unlimited national emergency, he could exercise similar control through the Army or Navy over the transmission by cable of messages from the United States.

A great deal can be done by the President with respect to censorship of second, third, and fourth class mail; but in view of the protection which the existing statutes afford to sealed first class mail, the problem there is a difficult one, and it is still being studied.

June 19, 1941

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF GOVERNMENT REPORTS

## I. Wireless

Section 606(c) of the Communications Act of 1934[1] provides that, upon proclamation by the President that there exists a national emergency, the President may suspend or amend for such time as he sees fit the rules and regulations applicable to any and all radio stations within the jurisdiction of the United States, and may cause the closing of any station and the removal of its apparatus and equipment, or he may authorize the use or control of any such station and/or its apparatus and equipment by any department of the government under such regulations as he may prescribe, upon just compensation to the owners.

Under this power the President may under existing circumstances take over and control the radio stations of the country. If he does not desire to go that far, the President in my opinion may, through appropriate agents and regulations, control any radio station so as to prevent the transmission from the United States of any message, or part thereof, inimical to the national security and foreign policy of the nation.

Attention is called, however, to the provisions of section 605 of the Communications Act of 1934 that, "no person not being authorized by the sender shall intercept any communication [by wire or radio] and divulge or publish the . . . contents . . . of such intercepted communication to any person." 48 Stat. at 1104. The Supreme Court has held that this provision applies to wiretapping and interception of messages, even by the government, for the purpose of obtaining

---

[1] Act of June 19, 1934, ch. 652, 48 Stat. 1064, 1104–05, *codified at* 47 U.S.C. § 606.

evidence. *Weiss v. United States*, 308 U.S. 321 (1939); *Nardone v. United States*, 308 U.S. 338 (1937). Attention is also called to section 326 of said Communications Act, which prohibits the Commission from establishing any censorship over any radio communications or signals. Notwithstanding these provisions, I believe that under his emergency powers referred to above, the President may exercise the control above stated. Whether or not information obtained through the exercise of this control could be used as evidence presents a different question, and I express no opinion about that for the moment.

## II. Cable

Specific emergency powers like those granted over radio are not contained in the Communications Act, or elsewhere, with respect to cables. But should the President as Commander in Chief and under his other constitutional powers deem such action essential to the protection of the armed forces or the national security, or the protection of shipping, etc., in a time of unlimited national emergency such as now exists, he could, I believe, exercise similar control through the Army or Navy over the transmission by cable of messages from the United States. On April 28, 1917, censorship of cable, telegraph, and telephone lines was established by Executive Order 2604, which recited the authority of the President under the Constitution and the Joint Resolution of April 6, 1917 declaring an existence of a state of war. Legislation was subsequently enacted specifically authorizing censorship (Trading with the Enemy Act[2]), but this legislation was only for the period of the war of 1917–18. Similar legislation is desirable to put the matter beyond doubt, although I believe the President may act without it.

## III. Mail

During the last war there was no censorship of mail until October 12, 1917, when it was established under the authority contained in the Trading with the Enemy Act of October 6, 1917 (§ 3(d)). This statutory provision is no longer in existence. It is clear a great deal can be done with respect to second, third, and fourth class mail; but in view of the protection which the existing statutes afford to sealed first class mail, the problem there is a difficult one, and I am still studying it.

CHARLES FAHY
*Assistant Solicitor General*

---

[2] Act of Oct. 6, 1917, ch. 106, 40 Stat. 411.