Oscar Murov, J.
Defendants, George Fortmuller, Anne Punzone, Vincent Punzone and Warren Keigharn, charged in a multicount indictment with the commission of gambling offenses, make this motion pursuant to CPL 710.20 (subd 2) for suppression of evidence obtained by electronic eavesdropping.
The evidence in question was obtained pursuant to an eavesdropping warrant issued by Mr. Justice Bracken of the Supreme Court in Suffolk County. The underlying application relied upon by the issuing Judge as providing probable cause to issue the warrant alleges in a paragraph thereof as follows: "In an effort to further verify the information given to me by the confidential and reliable informant, the informant, in the early part of November, 1974, at my direction, placed a sports bet with George Fortmuller through an intermediary. The *851 informant, with his consent, was wearing a recording device at the time that this bet was place by the intermediary with George Fortmuller. I have listened to the tape recording which resulted from that meeting, and it reveals that the intermediary placed a sports bet for the confidential and reliable informant, and a horse racing bet for someone else by calling telephone number 423-5659 and speaking to the individual who answered the phone. The tape recording also reveals that the intermediary spoke to an individual by the name of George when he placed the two bets.”
It is the defendants’ contention that the act described in the affidavit constitutes an initial surveillance and unauthorized tape recording of a telephone conversation conducted prior to the issuance of the eavesdrop order, and that such warrantless electronic interception was unlawfully obtained since the informant was neither a party to the conversation nor did he have the consent of either of the parties to overhear or record said conversation.
The People oppose the application pointing out that the informant heard only one end of the conversation, namely, the words of the intermediary spoken in the informant’s presence and with full knowledge of his presence. They further argue that even should the court rule that the transmission and recording thus obtained was unlawfully acquired, defendant was not a party to such transmission and, consequently, lacks standing to move for the suppression thereof.
Initially, it must be noted that the court concurs in defendants’ contention that evidence acquired by the police under the eavesdrop warrant must be suppressed if the evidence acquired by them to support probable cause to issue the warrant was unlawfully obtained. The court, in arriving at this conclusion, is persuaded by the compelling holding in Everhart v State (274 Md —; 17 Cr L 2107) where the court stated:
"(W)e find that the holdings in Silverthorne Lumber Co. v U. S., 251 US 385 (1920) in Nardone v U.S., 308 US 338 (1939), in Wong Sun v U. S., 371 US 471 (1963), and in Alderman v U. S., 394 US 165 (1969) * * * compel the conclusion that if data set forth as a basis for the existence of probable cause in an application for a search warrant, was come upon or derived as a result of an illegal search and seizure, such primary illegality — in the absence of evidence of attenuation of a source independent of such 'taint’ — precludes the use of such *852 derivative evidence from being a valid basis for establishing the existence of probable cause, under the doctrine of the 'fruit of the poisonous tree’. * * *
"The doctrine of the 'fruit of the poisonous tree’ extends the scope of the exclusionary rule to bar not only evidence directly seized, but also evidence indirectly obtained as a result of information learned or leads obtained in the unlawful search; in its broadest sense it prohibits the prosecution from using in any manner, prejudicial to the accused, information derived from facts learned as the result of the unlawful acts of law enforcement agents.”
The paragraph in question relied upon by the Judge in making his determination that probable cause existed to issue the warrant, reveals only the substance of the intermediary’s words and nothing of the other individual’s words. "Intercepted communication” is defined in CPL 700.05 (subd 3) as follows: "3. Intercepted communication means (a) a telephonic or telegraphic communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment, or (b) a conversation or discussion which was intentionally overheard or recorded, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment. The term 'contents’ when used with respect to a communication, includes any information concerning the identity of the parties to such communications, and the existence, substance, purport, or meaning of that communication. The term 'communication’ includes conversation and discussion.”
Since what the informant purportedly heard and transmitted was only one end of the conversation, what was overheard was not a communication as that term is defined in the definition’s last sentence. Certainly the informant’s known presence precludes a finding that there was an intercepted communication within the meaning of CPL 700.05 (subd 3, par M).
All that remains to be determined is the question of any invasion of the intermediary’s expectations of privacy and whether a warrant requirement exists respecting the transmission and/or recording of the words of the sender-intermediary.
United States v White (401 US 745) is dispositive of both *853 issues. Quoting Hoffa v United States (385 US 293) the court states (p 749): "however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, 'no interest legitimately protected by the Fourth Amendment is involved’, for that amendment affords no protection to 'a wrongdoer’s misplaced belief that a person to whom he confides his wrongdoing will not reveal it’.”
The informant is not barred from testifying as to what another person said merely because he was saying it into a telephone (Ann., 9 ALR3d 429), nor is the use of the evidence barred because it was recorded. Both here and in Lopez v United States (373 US 427) what was said was recorded. The Lopez court found this fact posed no additional problems. Speaking of a recorded bribe attempt, the court said (p 439): "We think the risk that petitioner took in offering a bribe to [the agent] fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording.”
The White paragraph quoted above concludes with a recapitulation of the holding in Lopez v United States (373 US 427, supra) that no warrant is required for the participant recording of a conversation. (See, also, United States v Santillo, 507 F2d 629.)
The People’s final argument finds strong support in Alderman v United States (394 US 165). There the court held on page 176 that the only persons with standing to suppress government evidence originating in electronic surveillance are those who were participants in the conversations or those upon whose premises the violations occurred whether or not he was present on the premises or participated in the conversations. (See, also, People v Cefaro, 21 NY2d 252, 257.)
In view of the foregoing, it is the decision of the court that defendants’ motion to suppress is denied in all respects.