**Joe Allen SPARKMAN,
Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.**

**No. 81–2410
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 9, 1982.

Bertrand C. Moser, Houston, Tex., for petitioner-appellant.

Linda Marshall, Asst. Atty. Gen., Houston, Tex., for respondent-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

Petitioner-appellant, Joe Allen Sparkman, together with accomplice, Leroy Goodman, was convicted after a jury trial of aggravated rape in June, 1976. The jury set appellant's sentence at fifty years and Goodman's at ninety-nine years. Sparkman's conviction was affirmed on direct appeal by the Texas Court of Criminal Appeals, where he presented the same arguments which he now presents to this Court. See Sparkman v. State, 580 S.W.2d 358 (Tex.Cr.App.1979). Sparkman thereafter filed applications for habeas corpus relief in the state courts which were summarily overruled. Appellant then filed for federal habeas relief alleging seven grounds of error. His application was referred to a U. S. Magistrate who recommended denial of relief without a hearing. The Magistrate's recommendations were adopted by the district court, and Sparkman now appeals.[1]

Petitioner's only assertion on appeal is that he was denied due process of law by the introduction of testimony as to his reputation, at the punishment phase of the trial, from Texas Assistant Attorney General (now U. S. Magistrate), Calvin Botley, whose knowledge of Sparkman's reputation arose from his investigation of a prior conviction set aside, prior to this trial, for ineffective assistance of counsel. The relevant facts underlying this contention are as follows: In 1969, Sparkman was convicted and sentenced to life imprisonment for the offense of robbery. After exhausting his state remedies, Sparkman filed for federal habeas relief in the United States District Court for the Southern District of Texas. A hearing was ordered by the district court, and Assistant Attorney General Botley was charged to represent the State. In the course of preparing for the hearing, Botley had the opportunity to review the entire case file and to speak with various people in the community who knew of Joe Allen Sparkman. The district court granted Sparkman habeas relief in March, 1975, and he was released from imprisonment on June 25, 1975. Three months later the rape for which Sparkman was convicted and now appeals occurred.

When Sparkman was brought to trial in January, 1976, the state trial court granted defendant's Motion in Limine forbidding the State from making any reference to Sparkman's 1969 arrest and conviction for robbery. Sparkman was then tried and found guilty of aggravated rape. At the punishment phase of the trial, however, the

---

1. In his federal habeas corpus petition, petitioner set forth seven allegations to support his claim of constitutional deprivation. These allegations were as follows. First, at the punishment phase of petitioner's trial, the trial court erred by allowing Assistant Attorney General, Calvin Botley, to testify concerning petitioner's bad reputation in the community. Second, the testimony of Botley was not harmless error. Third, the jury instructions at the guilt or innocence phase of petitioner's bifurcated trial were improper for the following reasons: (a) the instructions were not limited to the theory in the indictment, rather they applied the word "force" which is not part of the convicting statute; (b) the instructions authorized conviction under a theory of a lesser included offense, which was not set out in the indictment and not requested by the petitioner; and (c) the instructions only authorized conviction and made no provisions for acquittal. Fourth, the indict- ment was fatally defective because it did not comply with Article 21.03, Texas Penal Code. Fifth, the trial court erred in its ruling on admissibility of evidence: (a) by refusing to grant petitioner's motion for mistrial because of prejudicial statements made to the jury by the prosecutor; and (b) by permitting the state to bolster its own witnesses. Sixth, the trial court erred in admitting the following exhibits: (a) exhibit No. 43 because it purported to represent a judgment which was improper and not authorized by law; and (b) exhibit No. 32 because the State did not establish a proper chain of custody. Seventh, the evidence and testimony was insufficient to justify a finding of guilt beyond a reasonable doubt in petitioner's trial. On appeal, petitioner has raised only the first of these allegations as a ground for error. Accordingly, the remaining issues are deemed waived. Pate v. Wainwright, 607 F.2d 669, 670 (5th Cir. 1979).

State called Botley for the purpose of testifying as to Sparkman's reputation in the community. Defense counsel objected to the introduction of Botley's testimony arguing that it would be impossible to cross-examine the witness without delving into the circumstances surrounding the 1969 robbery conviction. His objection was overruled, and Botley was permitted to testify. After stating his name and employment, Botley testified as follows:

Q: Mr. Botley, I'd like to ask you if you are familiar with the general reputation in the community in which he resides and among the people who know him, of Joe Sparkman?

A: Yes, sir.

Q: And are you familiar with his reputation for being a peaceable and law-abiding citizen?

A: Yes, sir.

Q: And, is that reputation good or bad?

A: Bad.

Defense counsel did not attempt to cross-examine Botley.

The essence of petitioner's argument on appeal is that Sparkman was denied due process by the use of Botley's testimony which he claims was the "fruit of the poisonous tree," the poisonous tree allegedly being the prior invalid conviction. Petitioner argues that "the question in this case becomes whether Botley's testimony is tainted by the prior void conviction which was obtained at the expense of Sparkman's constitutional right to effective counsel." Relying upon various Fourth Amendment cases,[2] petitioner argues that if Sparkman had not been denied his right to effective counsel in 1969, Botley would never have learned of Sparkman's reputation and would not have been able to testify. Thus, Botley's testimony concerning defendant's reputation was a direct exploitation of the prior unconstitutional violation he had suffered, and, therefore, should have been excluded.

Petitioner's argument fails for several reasons. The exclusionary rule bars evidentiary "fruit" obtained as "a direct result" of an illegal search, illegal course of interrogation, or other illegal action of the police. *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 454 (1963). Exclusion is only appropriate, however, if the "fruit" is sufficiently connected to the illegal "tree." In *Wong Sun, supra*, the Supreme Court stated:

We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d at 455, *quoting* R. Maguire, *Evidence of Guilt*, 221 (1959). It is questionable in this case whether Botley's testimony was in any way the "fruit of the poisonous tree." Botley obtained his knowledge of appellant's reputation while investigating the facts of an earlier crime, a presumptively valid conviction. This information was equally available to anyone else, and without regard to whether appellant was convicted of the robbery. Petitioner's conviction was overturned not for insufficient evidence or for any illegal arrest, search or other improper police activity, but because his lawyer was ineffective. In this light, it is difficult to see the direct connection between the alleged "fruit"—Botley's investigation into a valid conviction—and the "poisonous tree" —the invalid conviction due to ineffective counsel.

In any case, where the relationship between the unconstitutional action and the questioned evidence is "so attenuated as to

---

**2.** Specifically, petitioner refers to *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *U. S. v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). Additionally, petitioner relies on *United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980).

dissipate the taint" the evidence is admissible. *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). In this case, Botley's investigation and testimony were in no way tainted by the fact that appellant's counsel failed to represent him properly at his robbery trial.

Additionally, this Court in *United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980) stated:

> [R]ecent Supreme Court decisions reject earlier statements that portray the exclusion of illegally obtained evidence as constitutionally required and make clear that the exclusionary rule reduces to a "judicially created remedy" to be applied only when it advances its judicial purpose .... In the fourth amendment context, the "single and distinct" purpose for the exclusionary rule is deterrence of police violations of that constitutional protection against unreasonable search and seizures .... In the fifth and sixth amendment context, the "prime purpose" of the exclusionary rule as applied to the fruits of police illegality is deterrence of government denial of the self-incrimination privilege or the counsel right, ... but a secondary purpose is ensuring the trustworthiness of incriminating statements .... The attenuated connection exception and the independent source exception are justified because it is unlikely that suppression of attenuated or independently discovered derivative evidence would deter police misconduct and would bar untrustworthy evidence ....

*Id.* at 1046–47 (citations and footnotes omitted). Application of an exclusionary rule in this case would not deter any illegal government conduct, since none has occurred. In sum, petitioner asks this Court to make a novel interpretation and extension of the "fruit of the poisonous tree" doctrine. He attempts to create an animal which simply does not exist.

Finally, even if admission of Botley's testimony was error, petitioner would not be entitled to federal habeas relief unless the evidence so infected the trial as to deny fundamental fairness. *See Corpus v. Estelle*, 571 F.2d 1378, 1381 (5th Cir.), *cert. denied*, 439 U.S. 957, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978). The testimony must have been " 'material in the sense of a crucial, critical, highly significant factor' " to justify habeas relief. *Corpus v. Beto*, 469 F.2d 953, 956 (5th Cir. 1972), *cert. denied* 414 U.S. 932, 94 S.Ct. 236, 38 L.Ed.2d 162 (1973), *quoting Luna v. Beto*, 395 F.2d 35, 41 (5th Cir. 1968) (en banc) (Brown, J., concurring), *cert. denied*, 394 U.S. 966, 89 S.Ct. 1310, 22 L.Ed.2d 568 (1969). Botley's brief testimony in the punishment phase of the trial falls far short of this exacting standard. Accordingly, we find no merit to petitioner's argument.

AFFIRMED.