OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Robert W. Harden, appeals from his convictions for breaking and entering, vandalism, grand theft, and having a weapon while under disability following the denial of his motion to suppress.
On June 6, 1998, Lieutenant Jerome Johnson ("Lieutenant Johnson") of the East Cleveland Police Department in Cuyahoga County, Ohio, had occasion to speak with several incarcerated juvenile offenders and their parents. During this conversation, they informed Lieutenant Johnson that a man named "Dino" had been selling weapons on the street in East Cleveland.
Later in the day, one of the juveniles informed Lieutenant Johnson that Dino had indicated that he had obtained the guns during a break-in at a store in Painesville, Lake County, Ohio. The youth described the approximate location of the store and stated that at least one of the weapons which Dino possessed was a Glock semi-automatic handgun. Indeed, the juvenile told Lieutenant Johnson that Dino had asked him to accompany Dino back to Painesville in order to retrieve several weapons which were still stashed there.
Lieutenant Johnson knew "Dino" to be appellant from past dealings with the latter in East Cleveland. Indeed, he had personally arrested appellant on numerous occasions for a variety of crimes, including drug and theft offenses.
After talking with the juveniles, Lieutenant Johnson telephoned the Painesville Police Department in Lake County which confirmed that thirteen guns had been reported stolen following a break-in at a sporting goods store there on May 31, 1998. Human blood was found at the scene where the thief had apparently cut himself on smashed glass. The Painesville police faxed a list of the stolen weapons to the East Cleveland Police Department. The list showed that the thief had absconded with multiple Glock handguns from the store.
Shortly thereafter, Lieutenant Johnson received a telephone tip from an anonymous caller who had just seen "Dino" attempting to sell weapons in an area of East Cleveland. Based on the information that Dino was out on the streets in the possession of guns, Lieutenant Johnson and another officer proceeded to drive in an unmarked police car to the general vicinity where he had been reported. After some visual searching, Lieutenant Johnson spotted appellant walking along the street at a very fast pace. Before the officers could stop him, though, appellant entered a neighborhood bar. Lieutenant Johnson followed appellant into the tavern and approached him. Appellant recognized Lieutenant Johnson from their prior dealings, and he agreed to speak with the officer outside the premises.
Before leaving the bar, Lieutenant Johnson conducted a quick frisk of appellant's waistband, but found nothing hidden there. This frisk was very limited in scope because Lieutenant Johnson's freedom of movement was constrained by the narrow aisleway inside the establishment. The officer claimed he frisked appellant because of his concern that the latter may still have been in possession of a weapon given the numerous reports suggesting that appellant had been seen selling guns on the street. In addition, appellant was known to have a history of aggressive behavior toward police officers.
Once outside the bar, Lieutenant Johnson conducted a more thorough pat-down of appellant. During this search, he felt a hard object inside of appellant's pocket which he believed could be a weapon. Lieutenant Johnson removed the object and discovered that it was a hard plastic MM candy container which was approximately four inches in length and one inch in diameter. Upon removing it from appellant's pocket, Lieutenant Johnson heard something rattling inside the container.
Given his considerable training and experience in narcotics arrests and his knowledge that illegal drugs are often stored in small containers and vials, Lieutenant Johnson believed there was a strong probability that there was an illicit substance inside of the candy holder, especially in light of appellant's drug connections. Consequently, he opened it and discovered what turned out to be twenty-one rocks of crack cocaine. Lieutenant Johnson placed appellant under arrest for drug possession and transported him to the East Cleveland Police Department.
At the police station, appellant was booked on the drug charge. Lieutenant Johnson never questioned appellant about stolen weapons or the break-in at the Painesville sporting goods store. Instead, Lieutenant Johnson contacted law enforcement officials at the Painesville Police Department in order to determine whether they desired to interview appellant as a potential suspect in the Painesville theft case. During the course of this telephone conversation, the officer informed the Painesville authorities that appellant had multiple cuts on his arm.
Within two hours, Detective Robert Sayer ("Detective Sayer") of the Painesville Police Department arrived at the East Cleveland police station in order to interview appellant. After speaking briefly with Lieutenant Johnson, Detective Sayer was placed in an interview room with appellant. Two other police officers were also present in the room.
Detective Sayer read the standard Miranda warnings to appellant who then signed a form verifying that he had been informed of his various rights. Appellant orally waived the right to remain silent and the right to have an attorney be present and agreed to speak with Detective Sayer regarding the Painesville break-in.
At the outset, appellant conceded that he had recently been staying at his sister's residence in Painesville while attempting to "dry out" from a crack cocaine problem. The sister's residence was in close proximity to the sporting goods store where the theft took place. Detective Sayer then inquired as to how appellant had received the cuts on his arm. In response, appellant nonchalantly admitted that he had cut himself while breaking into the sporting goods store. The detective questioned him further about the break-in, and appellant provided the relevant details of the crime. Appellant ultimately signed a handwritten statement confessing his guilt.
In the confession, appellant indicated that he needed money in order to purchase crack cocaine. Necessity, as they say, is the mother of invention, and apparently an idea was born. Appellant admitted that he went to the Painesville sporting goods store at approximately 1:00 a.m., where he proceeded to throw a brick through the glass door to gain entry into the store. Once inside, he used his hand to smash a glass case where sundry guns were on display. Appellant then stole the weapons, exited the store, and returned on foot to his sister's nearby residence whereupon he fled in his car back to East Cleveland. There, appellant sold several handguns on the street and used the ill-gotten gains to buy crack cocaine.
On July 14, 1998, the Lake County Grand Jury returned a five-count felony indictment against appellant charging him with the following criminal offenses: (1) breaking and entering in violation of R.C. 2911.13; (2) vandalism in violation of R.C.2909.05; (3) grand theft in violation of R.C. 2913.02(A)(1) and (B)(4) along with a firearm specification under R.C. 2941.141; (4) grand theft in violation of R.C. 2913.02(A)(1) and (B)(2) along with a firearm specification under R.C. 2941.141; and (5) having a weapon while under disability in violation of R.C. 2923.13. At his arraignment three days later, appellant entered a written plea of not guilty to the charges.
On August 7, 1998, appellant filed a motion to suppress any and all evidence obtained by the East Cleveland and Painesville Police Departments. As grounds for the motion, appellant alleged that he had been the subject of an illegal detention and subsequent search by the East Cleveland police. The Lake County Court of Common Pleas ("the trial court") conducted a suppression hearing on September 9, 1998, at which time Lieutenant Johnson and Detective Sayer testified. At the close of the proceeding, the trial court orally overruled the motion to suppress. In doing so, the trial court opined that appellant's confession to Detective Sayer in relation to the Painesville break-in was analytically distinct from the initial actions of Lieutenant Johnson in effecting the search and seizure of appellant in East Cleveland on the drug possession charge. Despite this, the trial court went on to consider the propriety of Lieutenant Johnson's conduct by determining that his search and resulting arrest of appellant in East Cleveland were constitutionally valid.
Following the denial of his motion to suppress, appellant entered a written plea of no contest to Counts One, Two, Three, and Five as set forth in the indictment. Upon application of the prosecuting attorney, the trial court entered a nolle prosequi
with regard to Count Four.
On September 23, 1998, appellant formally pled no contest to the remaining four charges. The trial court sentenced appellant to serve one-year prison terms with respect to Counts One, Two, and Five and an eighteen-month term of imprisonment on Count Three. These sentences were to run concurrently. The trial court also ordered appellant to serve an additional one-year prison term, prior to the other sentences, for the R.C. 2941.141 firearm specification conviction.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignment of error:
 "The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress."
In his lone assignment of error, appellant posits that the trial court erred by denying his motion to suppress. Pursuant to this assigned error, appellant presents five separate issues for review: (1) the constitutionality of the initial stop and frisk inside the East Cleveland bar; (2) the constitutionality of the pat-down search outside the bar and the subsequent opening of the plastic candy container; (3) whether the trial court applied the proper standard when assessing the constitutionality of the pat-down search; (4) whether the trial court's upholding of the pat-down search was based on an accurate understanding of Lieutenant Johnson's testimony at the suppression hearing; and (5) whether the trial court properly concluded that the constitutionality of Lieutenant Johnson's actions in East Cleveland was unrelated to the subsequent confession given by appellant to Detective Sayer.
Upon review, we have determined that the final issue briefed by appellant is dispositive of the instant appeal. As such, we will focus our analysis accordingly.
At the outset, we note that appellant was being prosecuted in the trial court solely for his actions at the sporting goods store in Painesville on May 31, 1998. Jurisdiction over the drug possession charge is lodged in a different court, to wit: the Cuyahoga County Court of Common Pleas.
By filing the motion to suppress, appellant was asking the trial court to exclude from evidence the oral statements and written confession that he gave to Detective Sayer. As grounds for suppressing this particular evidence, appellant contends that he was the subject of an unconstitutional search and seizure by Lieutenant Johnson, thereby resulting in an illegal arrest by the East Cleveland police. Appellant proceeds to argue that Detective Sayer's subsequent questioning of him concerning the Painesville break-in was somehow tainted by the alleged Fourth Amendment violation committed in East Cleveland by Lieutenant Johnson.
Appellant's position in this regard is entirely untenable. Even assuming arguendo that Lieutenant Johnson did not possess the required reasonable suspicion and probable cause to carry out the search and arrest of appellant on the drug charge, the confession that appellant later gave to Detective Sayer was admissible pursuant to the attenuation doctrine.
The exclusionary rule operates to exclude from trial that evidence which was obtained by law enforcement agents in violation of the United States Constitution. The primary purpose advanced in support of the exclusionary rule is the deterrence of police misconduct. In contrast thereto is the competing societal concern that the guilty be punished for their crimes and that the judicial process not be subverted through the deliberate exclusion of trustworthy, relevant evidence from the factfinding process in a criminal trial.
The exclusionary rule bars not only the admission of primary evidence which was obtained as a direct result of a constitutional violation, but also prohibits the introduction of subsequent evidence gleaned as an indirect result of the constitutionally violative conduct. Such secondary evidence is often referred to as derivative evidence, or the "fruit of the poisonous tree."
Evidence that is derivative of a constitutional violation need not be excluded if it falls within the ambit of an established exception to the derivative evidence rule. The United States Supreme Court has recognized three principal exceptions. See, generally, 1 Katz Giannelli, Criminal Law (1996), Sections 32.7-32.9, at 688-702. They are the independent source doctrine, see Silverthorne Lumber Co. v. United States (1920), 251 U.S. 385; the inevitable discovery doctrine, see Nix v. Williams (1984),467 U.S. 431; and the attenuation doctrine, see Nardone v.United States (1939), 308 U.S. 338. The latter exception is applicable in the case at bar.
Pursuant to the attenuation doctrine, secondary evidence that derives from a constitutional violation may be admissible at trial if the causal connection between the original illegality and the evidence sought to be admitted has become so attenuated as to dissipate or extinguish the taint. As stated by the United States Supreme Court:
 "We need not hold that all evidence is `fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" (Citation omitted.) Wong Sun v. United States
(1963), 371 U.S. 471, 487-488.
The attenuation doctrine most often arises in the context of incriminatory statements made by an accused following a purportedly illegal arrest. This is essentially the scenario presented by the instant appeal.
The United States Supreme Court and lower federal and state courts invoking the attenuation doctrine have justified its use by focusing upon the lack of a deterrent effect on police misconduct which exclusion of the evidence would have. State v. Adams (Dec. 14, 1983), Greene App. No. 83-CA-25, unreported, at 12, 1983 Ohio App. LEXIS 13254. The concept of "dissipation of the taint" is an attempt to identify the point in time at which the detrimental consequences of illegal police conduct become so attenuated that the deterrent effect of the exclusionary rule can no longer justify its cost to society. Brown v. Illinois (1975),422 U.S. 590, 609 (Powell, J., concurring in part).
In Brown, the United States Supreme Court discussed the factors to be considered when determining whether the causal connection between the illegality and the evidence sought to be admitted has become so negligible as to extinguish any constitutional taint. The Court held:
 "The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, * * * and, particularly, the purpose and flagrancy of the official misconduct are all relevant. * * * The voluntariness of the statement is a threshold requirement. * * * And the burden of showing admissibility rests, of course, on the prosecution." (Footnotes and citations omitted.) Brown, 422 U.S. at 603-604.
In the case sub judice, we need not definitively answer the question of whether a constitutional violation occurred during the interaction between appellant and Lieutenant Johnson. Even assuming for the sake of argument that Lieutenant Johnson should not have opened the plastic candy container, appellant still has no legitimate basis to demand the suppression of his confession to Detective Sayer.
We can apply the Brown factors to the instant matter. Initially, we note that the arrest and the confession were fairly close in temporal proximity. Detective Sayer arrived at the East Cleveland Police Department within two hours of appellant's arrest by Lieutenant Johnson on the drug possession charge. Moreover, we acknowledge that no traditional intervening circumstances were brought to bear on appellant, such as presentment to a magistrate, consultation with an attorney, or release from custody.
Despite this, it is nevertheless apparent that the attenuation doctrine is still applicable for several reasons. First, the Brown Court held that the purpose and flagrancy of the police misconduct is particularly relevant. In the instant matter, even if we assume that Lieutenant Johnson overstepped constitutional boundaries by opening the candy container, it can hardly be said that he engaged in an act of misconduct which had a quality of purposefulness to it and whose impropriety was obvious. Given the facts that prevailed in this case, it is certainly arguable as to whether probable cause existed to believe that drugs were stashed inside the container and whether the exigency of the circumstances required the officer to open the candy holder immediately. We suspect that there would not be unanimity as to these issues among the courts of this state. Hence, Lieutenant Johnson's actions could not be considered flagrant or obviously improper.
Second, the Brown Court stated that the reading of the Miranda warnings is an important factor to take into consideration. It is uncontroverted that Detective Sayer read the required warnings to appellant before commencing any questioning at the East Cleveland police station. Appellant signed the Miranda form indicating that he understood his rights before orally waiving them. Upon doing so, appellant voluntarily confessed to breaking into the sporting goods store in Painesville. The voluntariness of this confession has never been disputed.
Finally, when a person is subjected to an illegal arrest, the taint associated with the arrest is diluted if the suspect is subsequently questioned by a different sovereign. State v. Smith
(Feb. 19, 1998), Cuyahoga App. No. 71974, unreported, at 11, 1998 Ohio App. LEXIS 632. In the case at hand, appellant was arrested for drug possession by Lieutenant Johnson of the East Cleveland Police Department. After being transported to the police station, appellant was booked and processed into a holding cell. Later in the day, Detective Sayer of the Painesville Police Department arrived in order to question appellant about the sporting goods store break-in. Detective Sayer worked for a different sovereign, and he interviewed appellant about a completely separate crime that was committed in a different county.
Upon review, it is obvious that the state met its burden of demonstrating the admissibility of appellant's confession in relation to the Painesville break-in. Even assuming arguendo that the original stop and search were illegal, the evidence of the Painesville break-in was not derived by way of the illegality. Instead, Detective Sayer obtained such evidence by distinguishable and untainted means. The attenuation doctrine applies because the causal connection between the original illegality and the evidence sought to be admitted (i.e., his confession to Detective Sayer) is so attenuated as to dissipate any taint. Consequently, the trial court did not err by denying the motion to suppress.
Based on the foregoing analysis, the assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
 ________________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.