BENTON, Judge,
concurring in part and dissenting in part.
I concur in the holding that John Herbert Davis’s arguments are not procedurally barred and that the record sufficiently identifies the evidence he contends was improperly admitted at trial. I dissent, however, from the holding that the trial judge did not err in denying Davis’s motion to suppress.
In Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), police officers were “converging on an area known for heavy narcotics trafficking in order to investigate drug transactions” when the officers “observed ... Wardlow standing next to [a] building holding an opaque bag.” Id. at 121-22, 120 S.Ct. at 674-75. The officers seized Ward-low after he “looked in the direction of the officers and fled.” Id. at 122, 120 S.Ct. at 675. The Supreme Court held that the officers articulated a reasonable suspicion that Wardlow was engaged in criminal activity because of his “presence in an area of heavy narcotics trafficking,” the usual presence of drug sellers and lookouts, and “his unprovoked flight upon noticing the police.” Id. at 124, 120 S.Ct. at 676. It is this series of acts that gave rise to a reasonable suspicion of criminal conduct in Wardlow.
The facts of Wardlow are not remotely similar to the circumstances surrounding the officer’s detention of Davis. When the officer received a dispatch to investigate a fight, “[h]e had no description of the suspect” involved in the fight. As the officer was en route in his automobile from an unspecified distance away from the neighborhood, he learned that the suspect was running away but received “no description of the suspect at that time.” In short, this officer was told to detain a person without having any description of that person or the clothing the person was wearing.
*542 The officer was told the person was running. Davis was not running. The officer never received a report that the suspect was driving a car. Yet, when the officer arrived at some undetermined time after the alert, he detained Davis. Although Davis’s vehicle “rapidly baek[ed] out of a driveway,” no evidence established that he was fleeing the police, saw the officer, or behaved suspiciously. The record fails to disclose the basis for the officer’s conclusion that Davis might have been the suspect or any other reason for stopping the vehicle and detaining Davis.
The fact that Davis was backing a car out of the driveway on a residential street toward which “the suspect was running” only provided the officer a hunch that Davis might have been the undescribed person that was seen running away. However, “the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society’s legitimate interests require the seizure of the particular individual.” Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2639, 61 L.Ed.2d 357 (1979). “An individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.” Wardlow, 528 U.S. at 124, 120 S.Ct. at 673.
In this case, the officer’s basis for the detention included only the fact that a disturbance had occurred several blocks away and a person had run toward the street where Davis later was backing his car “rapidly” out of a driveway. The evidence does not even establish that this street was an “area of expected criminal activity.” Moreover, the Commonwealth did not prove that Davis’s conduct in driving his car was in any way suspicious. The logical conclusion of the Commonwealth’s argument is that the officer could have detained any citizen on that street. In perverse fashion, the Commonwealth uses the fact that the officer had no description of the suspect as an affirmative factor to support the detention of Davis. The Supreme Court long ago ruled, however, that “an understandable desire to assert a police presence ... does not negate Fourth Amendment guarantees.” Brown, 443 U.S. at *543 52, 99 S.Ct. at 2637. This officer’s failure to articulate more than an “inchoate and unparticularized suspicion or ‘hunch’ ” that Davis was engaged in criminal activity renders his detention of Davis unlawful. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).
In addition, the record proved that the officer used this detention as an opportunity to learn whether Davis “was wanted for any other offenses.” To do so, he secured and checked Davis’s driver’s license, which caused him to learn Davis “was suspended.” Thus, the initial unlawful detention was extended to include matters that had no bearing on the fight investigation. The record contains no explanation for the officer’s decision to abandon the search for the fight suspect and focus on “other offenses.”
Later that same day, the officer again detained Davis because he had learned during the earlier unlawful detention that Davis’s “license was suspended.” The evidence in this record proved no “means sufficiently distinguishable” from the initial detention to purge the officer’s second detention of Davis from the “taint” of the initial unlawful detention. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417-18, 9 L.Ed.2d 441 (1963). The exclusionary rule encompasses not only primary evidence that is obtained as a direct result of an unlawful seizure, see Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), but also evidence that is derivative of the unlawful seizure, which is often called “a fruit of the poisonous tree.” Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266-68, 84 L.Ed. 307 (1939). In other words, the exclusionary rule “extends as well to the indirect as the direct products of [unconstitutional] invasions.” Wong Sun, 371 U.S. at 484, 83 S.Ct. at 407.
This is not “a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has ‘become so attenuated as to dissipate the taint.’ ” Id. at 487, 83 S.Ct. at 407 (citation omitted). The record clearly establishes the primary illegality and further proves that “the evidence to which instant objection is made *544 has been come at by exploitation of that illegality ... [and not] by means sufficiently distinguishable to be purged of the primary taint.” Id. at 488, 83 S.Ct. at 407. To lawfully arrest Davis for this later violation, the officer must have been acting on facts or circumstances that bear no taint of the initial illegal detention. The evidence fails to establish an independent basis for the second detention.
For these reasons, I would hold that the identification and detention of Davis during the second detention were “come at by the exploitation of that [initial] illegality,” id., and, thus, may not be used. Because the trial judge erred in refusing to suppress the evidence, I would reverse the conviction and remand for a new trial.