NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2864
_____

UNITED STATES OF AMERICA,

Appellee,


v.


SHAHKWON DAVIS,

Appellant


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 06-cr-00020-001)
District Judge: Honorable Thomas I. Vanaskie
_____

Submitted Under Third Circuit LAR 34.1(a)
April 16, 2010

Before:  SLOVITER and HARDIMAN, *Circuit Judges*
and POLLAK[*], *District Judge*.

(Filed: June 7, 2010   )


_____

[*] Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT
_____

POLLAK, *District Judge*.

Shahkwon Davis has been convicted of, and sentenced for: (1) six counts of distribution of and possession with intent to distribute, various quantities of cocaine, crack cocaine, and marijuana in violation of 21 U.S.C. § 41(a)(1); and (2) one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Davis claims on appeal, as he did in the District Court, that the search of his home violated the Fourth Amendment. We will affirm the District Court's judgment and sentence.

I.

Because we write primarily for the parties, we recount only the essential facts. In April 2005, detectives with the Lackawanna County District Attorney's Office received information from a known confidential informant about drug trafficking occurring in Scranton, Pennsylvania. The informant alleged the following: (1) he could obtain cocaine from a man named "Shawn" or "Sean;" (2) Sean resides at 814 East Locust Street in Scranton; (3) Sean drives a gold Cadillac or a gold and tan Kawasaki motorcycle; (4) Sean owns a handgun, shoulder holster, and bulletproof vest; and (6) Sean is a black male with short hair in his late twenties, approximately 6 feet in height and weighing 180 lbs. The detectives arranged for the informant to call Davis, using a telephone number provided by the informant, and to set up a meeting to buy cocaine. The first controlled

1

purchase took place on October 18, 2005 in the parking lot of "Convenient Mart" located at the 1800 block of Pittston Avenue in Scranton, the pre-determined location where Davis asked to meet. Two additional controlled purchases took place at that same location, on November 15, and December 21. Prior to, during, and immediately following all three of the controlled purchases, law enforcement officers set up surveillance of 814 East Locust Street and the Convenient Mart. This surveillance yielded the following information: (1) immediately prior to all three purchases Davis was seen leaving 814 East Locust Street and arriving at the Convenient Mart; and (2) prior to the purchase on November 15, an unidentified black male accompanied Davis as he exited the building. Immediately following each purchase the informant met with the detectives to describe the transaction and surrender the cocaine. On December 21, 2005, the landlord at 814 East Locust Street confirmed that an individual named "Shahkwon Davis" resided on the second floor.

Following the December 21 controlled purchase, Detective Thomas Davis (no relation to defendant) sought and obtained a search warrant for 814 East Locust Street from a magistrate judge. Because defendant Davis was out of town, that search warrant was ultimately not executed. Instead, the detective and the informant planned a fourth controlled purchase. On December 29, 2005, in accordance with the arrangement, law enforcement officers observed defendant and another black male exit 814 East Locust Street and arrive at the Convenient Mart. The defendant and the informant exchanged

2

money for cocaine, and defendant was arrested and searched. The search of defendant's person yielded $700, of which $300 was pre-marked currency.

Law enforcement officers then proceeded to defendant's home at 814 East Locust Street, located approximately one mile from the Convenient Mart. They received authorization from the district attorney's office to conduct a protective sweep of the apartment.[1] After completing the search, which lasted one to two minutes, several officers remained at the apartment while Detective Davis sought a new search warrant.

The second search warrant affidavit was presented to a different magistrate judge. While it contained the same information as the first affidavit, it also included information about the fourth controlled purchase and defendant's subsequent arrest. However, Detective Davis did not notify the magistrate judge that law enforcement officers had conducted a protective sweep of defendant's apartment. The search warrant, signed by the magistrate judge on December 29, 2005 at 9:05 p.m, authorized the search and seizure of drugs, records, relevant paraphernalia, and "firearms or ammunition." Once the warrant issued, the law enforcement officers conducted another search of the apartment during which they seized $14,480, marijuana, crack cocaine, cocaine, a loaded hand gun, and a bulletproof vest.

---

[1] The officers claimed that they were concerned that another person remained at Davis's apartment and might destroy any remaining evidence. They alleged that the lights had remained on in Davis's apartment after he left it, although they admitted that they did not observe any movement inside the apartment.

3

On July 14, 2006, Davis moved to suppress the evidence and a suppression hearing was held on May 3, 2007. The District Court denied Davis's motion to suppress on July 16, 2007 on the grounds that the independent source doctrine applied. A jury found Davis guilty on all counts, and he was sentenced to a term of incarceration of 120 months followed by a five-year term of supervised release, payment of $700 special assessment, and forfeiture of $14,840.

## II.

On appeal, Davis claims that the two searches of his home violated the Fourth Amendment because: (1) his home was illegally subject to a warrantless search–namely, the protective sweep; (2) the search warrant obtained after the warrantless search was so tainted by the preceding illegality as not to be sufficiently independent; and (3) there was insufficient probable cause connecting his residence with narcotics trafficking to support the search warrant.

The Fourth Amendment protects individuals from "unreasonable searches and seizures" and requires all warrants to issue only upon "probable cause." Evidence that is seized in violation of the Fourth Amendment must be excluded. *See, e.g.*, *Segura v. United States*, 468 U.S. 796, 804 (1984) ("Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion."). Evidence that is "tainted" by an illegal search or considered "fruit of the poisonous tree" may also be excluded. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). In those cases, the

4

question for us is whether "the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.'" *Segura*, 468 U.S. at 805 (citing *Nardone v. United States*, 308 U.S. 338, 341 (1939)). If the evidence is sufficiently removed from the illegality, then it is not excluded. *Segura*, 468 U.S. at 805. However, when there is an "independent source" for the warrant, "[w]hether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence" and exclusion is "not warranted." *Id.* at 813-14.

Two questions guide our inquiry into the application of the independent source doctrine. First, we must determine whether "the agents' decision to seek the warrant was prompted by what they had seen during the [warrantless] entry" and whether the "information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray v. United States*, 487 U.S. 533, 542 (1988). Second, "we must . . . determine if there was probable cause for the warrant to be issued." *United States v. Price*, 558 F.3d 270, 281 (3d Cir. 2009) (citations and quotations omitted). If "[n]one of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment," then the warrant is not tainted by any preceding illegality. *Segura*, 468 U.S. at 814.

Thus, the first issue is whether the detectives' decision to seek to obtain the second search warrant was motivated by any information they had uncovered during the protective sweep of the apartment. We conclude that it was not. Unless there is clear

5

error, we "ordinarily defer to the trial presider's factual findings based on credibility judgments about the witnesses presented at the trial or hearing." *Carlisle Area Sch. v. Scott P. By and Through Bess P.*, 62 F.3d 520, 528 (3d Cir. 1995). In this case, as in *Price*, "it seems impossible that the police would not have applied for a warrant to search" Davis's residence given the District Court's finding that law enforcement officers in this case had, (1) previously obtained a search warrant for his home, and (2) subsequent to seeking that search warrant had obtained additional evidence that defendant was engaged in drug trafficking. 558 F.3d at 282. Moreover, the decision to apply for the second search warrant was made *before* the protective sweep–the District Court found credible Detective Davis's testimony that he consulted with the district attorney's office first, and that it was decided that a search warrant would be sought *after* the protective sweep was conducted.

The corollary question is whether the magistrate judge's decision to issue the warrant was influenced by the warrantless entry. We find that it was not. The second warrant contained the same information as the first warrant, with two changes: (1) the second search warrant added that "firearms and ammunition" should be sought and (2) the affidavit described the December 29 controlled purchase. Thus, like *Segura*,:

> None of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment; the information . . . was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant.

6

468 U.S. at 814. To the extent that defendant suggests that law enforcement officers must have observed a weapon in his home during the protective search and only for that reason requested that the second search warrant permit "firearms and ammunition" to be seized, we reject that argument. The detectives knew at the outset–and stated in the first affidavit–that "Sean" was known to carry a handgun, a holster, and a bulletproof vest. While Detective Davis failed to include "firearms and ammunition" in the warrant as an item to be sought, the District Court credited the detective's testimony that he mistakenly neglected to include that information.

The independent source doctrine next requires us to determine whether there was probable cause for the warrant to issue. The first step of this evaluation requires us to "purge" the second warrant affidavit of any "tainted facts and conclusions." *United States v. Perez*, 280 F.3d 318, 340 (3d Cir. 2002). However, as we have already noted, none of the information in the second warrant affidavit stemmed from the search of the apartment; thus no "purging" of the affidavit is required. Thus, we must determine whether, under the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 238 (1983), "the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). The magistrate judge's determination of probable cause is subject to significant deference. *Gates*, 462 U.S. at 236. "[T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the

7

affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

In defendant Davis' view, the second affidavit lacked probable cause because: (1) the police did not observe any narcotics transactions actually occurring at Davis' residence; (2) there were no observations or photographs of Davis carrying anything from his residence; (3) the informant had never been at Davis' residence; (4) there was no information indicating that Davis stored firearms at his residence; and (5) informant's statement that Davis was known to carry a gun was hearsay. We disagree.

When seeking a search warrant for the premises of a suspected drug trafficker, "direct evidence linking the residence to criminal activity is not required to establish probable cause." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). Instead, we require evidence that "(1) . . . [the] person suspected of drug dealing is actually a drug dealer; (2) . . . [the] place to be searched is possessed by, or the domicile of, the dealer; and (3) . . . [the] home contains contraband linking it to the dealer's drug activities." *Id.* at 104. Those facts were sufficiently established in the affidavit supporting the second search warrant, which alleged the following: (1) the informant and Davis planned to, and actually exchanged, marked currency for cocaine; (2) Davis was seen arriving at his residence prior to two of the arranged purchases shortly after receiving the informant's planned phone call; (3) Davis was observed leaving his home at 814 East Locust Street

after receiving the informant's phone calls and prior to conducting all four of the controlled buys; (4) Davis was observed arriving at the Convenient Mart, the site of the arranged purchase, on all four occasions; (5) the informant stated that Davis sold him drugs during all four purchases; (6) the landlord confirmed that Davis lived at 814 East Locust Street; and (7) after his arrest Davis was found in possession of $300 of marked currency. Thus, there was a substantial basis for the magistrate judge to conclude that there was a "fair probability" that evidence of drug trafficking would be found at 814 East Locust Street.

Finally, because we agree with the District Court that the second search of the apartment was justified by the independent search doctrine, we need not decide whether the warrantless protective sweep of the apartment was unlawful or whether the circumstances underlying the first search warrant were suspect.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.